LOCAL UNION 204 OF the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFFILIATED WITH THE AFL–CIO, Appellee,

v.

IOWA ELECTRIC LIGHT AND POWER COMPANY, Appellant.

No. 81–1012.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1981.

Decided Jan. 8, 1982.

**414**

William Douglas, D. G. Ribble, argued, Lynch, Dallas, Smith & Harman, Cedar Rapids, Iowa, for appellant.

Joseph E. Day, argued, Hines, Pence, Day & Powers, Cedar Rapids, for appellee.

Margery E. Lieber, Deputy Asst. Gen. Counsel for Sp. Litigation.

James Y. Callear, William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., for N. L. R. B.

Before BRIGHT and ROSS, Circuit Judges, and GIBSON, Senior Circuit Judge.

ROSS, Circuit Judge.

The defendant, Iowa Electric Light and Power Company (Iowa Electric), appeals an order by the district court[1] granting the motion of Local Union 204 of the International Brotherhood of Electrical Workers (the union) for summary judgment in an action brought pursuant to section 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185 (1976).[2] For the reasons stated herein, we reverse.

*I. Background.*

Iowa Electric operates the Duane Arnold Energy Center, a nuclear power plant at

---

1. The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa.

2. 29 U.S.C. § 185 provides in part:
   (a) * * * Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Palo, Iowa. In 1979 Quality Control Inspectors (QCI's), who were not members of the union bargaining unit apparently desired union representation. Pursuant to accretion procedures in an existing collective bargaining agreement between Iowa Electric and the union, the union petitioned the National Labor Relations Board (NLRB) under section 9(c) of the Labor Management Relations Act, 29 U.S.C. § 159(c) (1976), for accretion of Quality Control Inspectors to the bargaining unit.[3] Iowa Electric resisted accretion contending that because Quality Control Inspectors are managerial or supervisory personnel, they are not includable within the bargaining unit for "employees."

On March 23, 1979, after a hearing before a hearing officer, the Regional Director of the NLRB affirmed the hearing officer's finding that QCI's were "employees" within the meaning of the collective bargaining agreement rather than management or supervisory personnel. Therefore, an election was directed to be held among the QCI's to determine if a majority of these employees chose the union as their bargaining representative. The Regional Director's decision was affirmed by a 3 to 2 vote of the NLRB.

On October 12, 1979, the election designating the union as the bargaining representative for QCI's was certified by the Regional Director of the NLRB. The union notified the company that it wished to meet to negotiate contract modifications. Iowa Electric notified the union that it did not intend to negotiate because it still maintained that the Quality Control Inspector position was managerial or supervisory and therefore, not appropriate for the bargaining unit. When the union proceeded through the grievance procedures of the

contract, the company continued to refuse to discuss the matter on these grounds. Finally, pursuant to Article V, Section 4 of the Collective Bargaining Agreement,[4] the union notified the company that it deemed its proposed contract modifications to have been accepted. When the company refused to meet the union's pay demands for QCI's, the union filed suit for breach of the collective bargaining agreement under section 301 of the Labor Management Relations Act.

The district court recognized that there was a question as to whether its jurisdiction was properly invoked in such a case, but concluded that it had jurisdiction under section 301 because the union's complaint alleged a breach of the agreement by the company in engaging in activity to defeat or evade the terms of the agreement. *Local Union 204, International Brotherhood of Electrical Workers v. Iowa Electric Light and Power Co.*, 496 F.Supp. 873, 875 (N.D. Iowa 1980). The court granted the plaintiff's motion for summary judgment on the grounds that because there was substantial evidence on the administrative record that QCI's were "employees," there was no genuine issue of material fact. *Id.* at 877. Consequently, the court entered a judgment against Iowa Electric for $23,400 damages.

Before admitting the necessity of addressing the soundness of the district court's analysis and conclusions as to the status of QCI's, we must first answer the question of whether a union representational matter, like that before this court, which is committed to the jurisdiction of the NLRB under 29 U.S.C. § 159, and which may be the subject of an unfair labor practice proceeding, 29 U.S.C. § 158(a)(5) (1976),[5] may also serve as the basis for a

---

**3.** The collective bargaining unit as set out in the contract excluded "office clerical employees, professional employees and guards and supervisors as defined in the National Labor Relations Act."

**4.** Section 4. The Company and the Union will endeavor to settle by the foregoing method all disputes arising under this Agreement. Should either party served with a notice of any grievance by the other party fail or refuse to meet to

attempt to settle such grievance within the time limits specified, unless the time limit shall be extended by written mutual consent, the aggrieved party shall then consider that the other party has recognized the merits of such grievance and the demands of the party alleging the grievance shall be deemed to have been granted.

**5.** 29 U.S.C. § 158(a)(5) provides that:

section 301 contract violation suit in the district court.

## II. District Court Jurisdiction.

■ Although we believe that the factual circumstances of this case present a somewhat novel question, we are not without guidance as to district court jurisdiction under section 301 over representational matters which may also constitute unfair labor practices under 29 U.S.C. § 158. The well entrenched general rule is that the fact that a particular activity may constitute an unfair labor practice under section 8 of the Labor Management Relations Act, 29 U.S.C. § 158, does not necessarily preclude the district court's jurisdiction under section 301 of the Act if that activity also constitutes a breach of the collective bargaining agreement. *William E. Arnold Co. v. Carpenters District Council*, 417 U.S. 12, 15–16, 94 S.Ct. 2069, 2071–72, 40 L.Ed.2d 620 (1974); *Smith v. Evening News Association*, 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962); *National Rejectors Industries v. United Steelworkers*, 562 F.2d 1069, 1074 (8th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 517 (1978); *Brown v. Sterling Aluminum Products Corporation*, 365 F.2d 651, 656 (8th Cir. 1966), *cert. denied*, 386 U.S. 957, 87 S.Ct. 1023, 18 L.Ed.2d 105 (1967). However, we are unable to find any case in which this rule has been held to apply to representational matters within the Board's jurisdiction under section 9 of the Labor Management Relations Act, 29 U.S.C. § 159. Instead, representational

matters have been almost invariably processed administratively through the NLRB under section 9 of the Act, with judicial review of the Board's determination by the courts of appeals under section 10 of the Act, 29 U.S.C. § 160.[6] *Local No. 3–193, International Woodworkers v. Ketchikan Pulp Co.*, 611 F.2d 1295, 1299 (9th Cir. 1980); *see, e.g., South Prairie Construction Co. v. Local 627, International Union of Operating Engineers*, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976); *NLRB v. Hoerner-Waldorf Corp.*, 525 F.2d 805 (8th Cir. 1975); *NLRB v. Bancroft Manufacturing Co.*, 516 F.2d 436 (5th Cir. 1975), *cert. denied*, 424 U.S. 914, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976).

Courts have found, in circumstances similar to those now before this court, that a dispute over a representational matter is a situation calling for a denial of district court jurisdiction. In *West Point-Pepperell, Inc. v. Textile Workers Union*, 559 F.2d 304 (5th Cir. 1977) a union which had been certified as the bargaining representative for employees of the plaintiff company merged with another union and requested the company to pay the dues and bargain exclusively with the union produced by the merger. The company filed suit for declaratory relief under section 301 of the LMRA, alleging that the union's efforts to force the company to recognize the union constituted a breach of the collective bargaining agreement. Concurrently, the union filed a petition with the NLRB under 29 U.S.C. § 159 for an amendment of the certification re-

---

(a) It shall be an unfair labor practice for an employer—

\* \* \* \* \* \*

(5) *to refuse to bargain collectively with the* representatives of his employees, subject to the provisions of section 9(a).

**6.** Generally representational questions are initially addressed by the NLRB under section 9 of the Act, 29 U.S.C. § 159. If the Board pursuant to those procedures certifies a union as the bargaining agent for a particular group of employees and the company refuses to collectively bargain with that union, a complaint pursuant to section 10(b) of the LMRA, 29 U.S.C. § 160(b), may be issued charging the company with an unfair labor practice under section 8(a)(5), 29 U.S.C. § 158(a)(5). The Board's rul-

ing on this issue after a hearing is subject to review by the court of appeals upon the filing of a petition for enforcement by the Board (section 10(e), 29 U.S.C. § 160(e)), or upon the filing of a petition for review by "[a]ny person aggrieved by a final order \* \* \* granting or denying in whole or part the relief sought." Section 10(f), 29 U.S.C. § 160(f). The court reviews the Board's actions to determine if they were arbitrary, capricious or not supported by substantial evidence on the record. 29 U.S.C. § 160(e), (f). *See, e.g., NLRB v. Hoerner-Waldorf Corp.*, 525 F.2d 805 (8th Cir. 1975). In the instant case the union abandoned this process after initial certification proceedings under section 9.

flecting the merger. The Court of Appeals for the Fifth Circuit adopted the district court opinion which held that the district court did not have jurisdiction over the section 301 suit. In support of its decision the court stated:

> Courts should not decide questions beyond their jurisdiction under the guise of construing contracts under Section 301.
>
>     *     *     *     *     *     *
>
> The National Labor Relations Act vests exclusive authority in the NLRB to pass on issues of representation. See *NLRB v. Cabot Carbon Co.*, 360 U.S. 203, 79 S.Ct. 1015, 3 L.Ed.2d 1175 (1959); *National Association of Women and Children's Apparel Salesmen, Inc.*, 479 F.2d 139 (5th Cir. 1973). Whether or not a merged union should remain as the bargaining agent of a unit of employees depends on a factual determination, whether it is a continuation of the old union under a new name or is a substantially different organization. *NLRB v. Commercial Letter, Inc.*, 496 F.2d 35 (8th Cir. 1974); *NLRB v. Hershey Chocolate Corp.*, 297 F.2d 286 (3rd Cir. 1961); *Carpinteria Lemon Association v. NLRB*, 240 F.2d 554 (9th Cir. 1956), *cert. den.*, 354 U.S. 909, 77 S.Ct. 1295, 1 L.Ed.2d 1427 (1957). This calls for a resolution of the right to represent, a matter within the exclusive domain of the NLRB and not compatible with the purpose of Section 301. *NLRB v. Newspapers, Inc.*, 515 F.2d 334 (5th Cir. 1975). See also *Retail Store Employees Union v. NLRB*, 528 F.2d 1225 (9th Cir. 1975).

559 F.2d at 306–07. *See also International Association of Machinists and Aerospace Workers v. International Air Service of Puerto Rico, Inc.*, 636 F.2d 848, 849 (1st Cir. 1980); *NLRB v. Bancroft Manufacturing Co., supra*, 516 F.2d at 439 n.2 (5th Cir. 1975); *Confederated Independent Unions v. Rockwell-Standard Co.*, 465 F.2d 1137, 1140 (3d Cir. 1972).

Nevertheless, the Supreme Court's decision in *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), has been interpreted as casting doubt on the soundness of a broad principle

of exclusiveness of the NLRB jurisdiction over representational matters. *See Local No. 3–193, International Woodworkers, supra*, 611 F.2d at 1298. In *Carey* the Court was faced with a section 301 suit to compel arbitration under a collective bargaining agreement. The controversy arose out of a jurisdictional dispute between two unions as to which union was the appropriate bargaining representative for a certain group of employees. On its way to holding that the district court had jurisdiction under section 301 to compel arbitration in accordance with the collective bargaining agreement, the Court stated in *dicta*:

> If this is truly a representation case, either IUE or Westinghouse can move to have the certificate clarified. But the existence of a remedy before the Board for an unfair labor practice does not bar individual employees from seeking damages for breach of a collective bargaining agreement in a state court, as we held in *Smith v. Evening News Assn.*, 371 U.S. 195 [83 S.Ct. 267, 9 L.Ed.2d 246]. We think the same policy considerations are applicable here; and that a suit either in the federal `courts, as provided by § 301(a) of the Labor Management Relations Act of 1947 (61 Stat. 156, 29 U.S.C. § 185(a); *Textile Workers v. Lincoln Mills*, 353 U.S. 448 [77 S.Ct. 912, 923, 1 L.Ed.2d 972]), or before such state tribunals as are authorized to act (*Charles Dowd Box Co. v. Courtney*, 368 U.S. 502 [82 S.Ct. 519, 7 L.Ed.2d 483]; *Teamsters Local v. Lucas Flour Co.*, 369 U.S. 95 [82 S.Ct. 571, 7 L.Ed.2d 593]) is proper, even though an alternative remedy before the Board is available, which, if invoked by the employer, will protect him.

375 U.S. at 268, 84 S.Ct. at 4C7.

However, subsequent decisions have substantially narrowed the scope of this language. In *South Prairie Construction Co. v. Local 627, International Union of Operating Engineers, supra*, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382, the Court reiterated the important federal labor law policy of deference to NLRB determinations of representational issues. In rejecting initial ju-

dicial determination of a section 9 representational question [7] as being " 'incompatible with the orderly function of the process of judicial review,' " the Court stated:

> Since the selection of an appropriate bargaining unit lies largely within the discretion of the Board, whose decision, "if not final, is rarely to be disturbed," *Packard Motor Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040, 1050 (1947), we think the function of the Court of Appeals ended when the Board's error on the "employer" issue was "laid bare." *FPC v. Idaho Power Co.*, 344 U.S. 17, 20, 73 S.Ct. 85, 86, 97 L.Ed. 15, 20 (1952).
>
> * * * In foreclosing the Board from the opportunity to determine the appropriate bargaining unit under § 9, the Court of Appeals did not give "due observance [to] the distribution of authority made by Congress as between its power to regulate commerce and the reviewing power which it has conferred upon the courts under Article III of the Constitution." *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 141, 60 S.Ct. 437, 440, 84 L.Ed. 656, 661 (1940).

425 U.S. at 805–06, 96 S.Ct. at 1844–45.

In light of *South Prairie* the Ninth Circuit in *Local 3–193, International Woodworkers v. Ketchikan Pulp Co., supra*, concluded that "Congress did not intend by enacting Section 301 to vest in the courts initial authority to consider and pass upon questions of representation and determination of appropriate bargaining units," under the guise of interpreting the collective bargaining agreement.[8] 611 F.2d at 1301. Al-

though the court questioned the Fifth Circuit's conclusion in *West Point-Pepperell, supra*, that NLRB jurisdiction over representational matters is exclusive, the court concluded that representational issues are at least within the primary jurisdiction of the NLRB.

The court noted that subsequent Supreme Court cases have demonstrated that a decisive factor in *Carey* was the "very strong policy favoring the invocation of arbitration to resolve all kinds of labor disputes under collective bargaining agreements providing for arbitration." *Local 3–193, International Woodworkers v. Ketchikan Pulp Co., supra*, 611 F.2d at 1298. In reference to the general rule that district court jurisdiction is not precluded just because a particular practice which arguably violates a collective bargaining agreement is also an unfair labor practice, the court noted that

> there is a critical difference between an unfair labor practice charge and the basic policy of the National Labor Relations Act vesting primary (if not exclusive) jurisdiction in the NLRB in two decisive areas of labor-management relations: (1) the designation of an exclusive bargaining agent, and (2) identification of an appropriate collective bargaining unit under Section 9 of the Labor Management Relations Act (29 U.S.C. § 159).

611 F.2d at 1298.

The court recognized that there is a "very, very strong policy" of using the procedures for representational determinations vested in the NLRB in order to promote

---

7. *South Prairie* involved court review of an NLRB order dismissing a union's unfair labor practice petition under sections 8(a)(1) and (5) of the NLRA. The major issue was whether two wholly owned subsidiaries (South Prairie and Kiewit) of another company were a single "employer" within the meaning of the Act. If they were found to be a single employer, South Prairie would have to recognize the Kiewit employees' bargaining representative as the bargaining representative of its employees under section 9 of the Act. The NLRB determined that the subsidiaries were not a single employer. The court of appeals reversed and consequently went on to hold that an unfair labor practice had been committed. The Supreme Court upheld the court of appeals' determina-

tion that the companies were a single "employer," but found that the court had erred in deciding the bargaining unit question which had not been passed on by the NLRB. *So. Prairie Const. Co. v. Local 627, Int'l Union Operating Eng'rs*, 425 U.S. at 806, 96 S.Ct. at 1845.

8. *Ketchikan Pulp* involved a controversy over whether the present bargaining representative also represented employees of subsequently acquired companies. The contract did not contain an arbitration provision. Neither the union nor the company made any attempt to use the NLRB procedures for relief under the Labor Management Relations Act.

industrial peace. This policy obviously has been recognized by the labor bar which has sought resolution of almost all representational problems through NLRB proceedings, with the only judicial involvement coming pursuant to judicial review of Board action pursuant to the Act. *Id.* at 1299 (see cases cited therein). To fail to apply this policy to section 301 actions would allow an "end run" around provisions of the NLRA under the guise of contract interpretation.[9]

Similarly, this court does not believe that *Carey* requires a finding of district court jurisdiction under section 301 in the present case. First, *Carey* has been consistently interpreted to support district court jurisdiction under section 301 of the LMRA over suits to compel arbitration of a representational dispute *where the parties have agreed under the collective bargaining agreement to arbitrate such matters. See, e.g., International Association of Machinists and Aerospace Workers v. International Air Service of Puerto Rico, Inc., supra,* 636 F.2d at 849–50; *Retail Clerks Local 588 v. NLRB,* 565 F.2d 769, 777–78 (D.C.Cir.1977); *Iron Workers Local Union No. 790 v. Bostrom-Bergen Metal Products,* 105 L.R.R.M. 2633 (N.D.Cal.1980). In the instant case, the union did not bring suit under section 301 for breach of the contract arbitration clause. As the district court found, the arbitration clause in this case was not mandatory, but provided "merely an optional method of resolving the contract dispute * * *."[10] *Local Union 204, International Brotherhood of Electrical Workers v. Iowa*

*Electric Light and Power Co., supra,* 496 F.Supp. at 875. *Cf. International Union of Operating Engineers v. Sid Richardson Carbon Co.,* 471 F.2d 1175, 1177–78 (5th Cir. 1973) (question of whether matter is arbitrable is for court; mere clause providing that interpretation of contract is arbitrable does not vest authority in arbitrator over representational matters.)

Thus, *Carey,* unlike the present case, can truly be viewed as arising out of a breach of a contract provision concerning arbitration. The present case, on the other hand, really is a suit to obtain review of an NLRB factual finding on a representational issue despite the fact that Congress has established an orderly review procedure under section 10 of the Act. We believe the appropriate line between those cases where the district court has jurisdiction under section 301 and those in which it does not is to be determined by examining the major issues to be decided as to whether they can be characterized as primarily representational or primarily contractual. *See Cappa v. Wiseman,* 659 F.2d 957 (9th Cir. 1981). In addition, it must be noted that *Carey* did not present the Court with a factual situation like that in the instant case in which the NLRB had already passed upon the representational issue in a section 9 certification proceeding.[11] Thus, the Court was not presented with a situation which amounted to district court review of *the merits* of a representational issue, and which held the possibility for a tangled mass of judicial and administrative conflict.

---

**9.** This characterization seems particularly apt to what both the union and the company appear to have attempted in the instant case. Apparently an unfair labor practice charge under 29 U.S.C. § 158(a)(5) was filed with the NLRB by the union, but was withdrawn by the union without prejudice on February 5, 1980. *See* Brief of Appellee at 17, *Local Union 204, Int'l Bhd. Elec. Workers v. Iowa Elec. Light and Power Co.,* 496 F.Supp. 873 (1980).

**10.** The arbitration provision stated that:

Questions or disputes regarding the interpretation, application, or claimed violation of the Agreement *may* be submitted to an Arbitration Board for decision provided there has been full compliance with the grievance procedure.

(Emphasis supplied.)

**11.** In this context it should be noted that courts have consistently refused to order arbitration where the Board had previously resolved the dispositive representational issue. *See, e.g., Smith Steel Workers v. A.O. Smith Corp.,* 420 F.2d 1, 10 (7th Cir. 1969); *McGuire v. Humble Oil & Refining Co.,* 355 F.2d 352, 358 (2d Cir.), *cert. denied,* 384 U.S. 988, 86 S.Ct. 1889, 16 L.Ed.2d 1004 (1966). *See also Carey v. Westinghouse Elec. Corp.,* 375 U.S. at 272, 84 S.Ct. at 409. When the Board issues an order determining the dispositive representational issue, no contractual issues remain to be decided through arbitration or bargaining. *Smith Steel Workers, supra.*

In light of this fact, we believe that another basic labor law principle is relevant. It is firmly established that NLRB representation determinations under 29 U.S.C. § 159 are ordinarily not directly reviewable in federal court under 28 U.S.C. § 1337 (1976). *Boire v. Greyhound Corp.,* 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); *A. F. of L. v. NLRB,* 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940); *Physicians National House Staff Ass'n v. Fanning,* 642 F.2d 492 (D.C.Cir.1980), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981); *Amalgamated Meat Cutters v. Allen,* 423 F.2d 267 (8th Cir. 1970), *aff'g,* 298 F.Supp. 985 (W.D.Mo.1969). Therefore, orders concerning representation matters under section 9 are reviewable only under the review procedures provided by sections 10(e) and (f) of the Act for review of unfair labor practice orders. *A. F. of L. v. NLRB, supra,* 308 U.S. at 405–09, 60 S.Ct. at 302–04; *Bishop v. NLRB,* 502 F.2d 1024, 1027 (5th Cir. 1974). This means that the district court in the instant case did not have jurisdiction under 28 U.S.C. § 1337 to review directly the NLRB's determination that the QCI's were "employees" appropriate for accretion to the bargaining unit. *See, id.; Physicians National House Staff Ass'n v. Fanning, supra,* 642 F.2d at 500; *Confederated Independent Unions v. Rockwell-Standard Co., supra,* 465 F.2d at 1140.

The rationale expressed by the Fifth Circuit in *Bishop v. NLRB, supra,* would seem to be particularly applicable to the present controversy.

Nowhere in the statutory scheme does Congress mention district court review of NLRB orders in representation cases, and there is a reason for that profound silence. The underlying purpose of the Act is to maintain industrial peace, *Brooks v. N.L.R.B.,* 1954, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125, and to allow employers and unions to rush into federal district court at will to prevent or nullify certification elections would encourage dilatory tactics by dissatisfied parties and lead to industrial unrest. *See* H.R.Rep.No. 245, 80th Cong., 1st Sess. 43; H.R.Rep.No. 510, 80th Cong., 1st Sess. 56–57. Such a rule would not only cause the federal courts to set the dockets of the NLRB, but time-consuming review in such cases would strike a blow at the foundations of our finely-tuned system of collective bargaining. For these reasons, Congress has determined that the NLRB, and not the courts, is to be the umpire in representation disputes. *National Ass'n of Women's & Children's Apparel Salesmen, Inc. v. F.T.C.,* 5 Cir. 1973, 479 F.2d 139.

502 F.2d at 1027 (citations omitted). See also *Physicians National House Staff Ass'n v. Fanning, supra,* 642 F.2d at 496–97.

The conclusion seems inescapable that the attempt by the parties in the instant case to have the district court review the question of whether QCI's are "employees" covered by the collective bargaining agreement, is actually a poorly veiled attempt to obtain direct review of a representational matter by invoking section 301 contract jurisdiction. To allow such a result would render nugatory sections 8, 9 and 10 of the Act, "for every dispute concerning the appropriate bargaining unit could be recast in terms of a breach of an 'alleged' bargaining agreement." *Couchigian v. Rick,* 489 F.Supp. 54, 57 (D.Minn.1980).

### III. Conclusion.

Regardless of whether NLRB jurisdiction under section 9 of the Labor Management Relations Act over representational issues like accretion to the existing bargaining unit is viewed as being exclusive or primary, it is clear that the district court in the instant case erred in concluding that it had jurisdiction to entertain this section 301 action. The well established policy of the National Labor Relations Board preeminence in determinations on representational matters in order to promote industrial peace, and the strong policy favoring an orderly process of judicial review of such matters dictate that the district court not exercise jurisdiction when the determination to be made is actually one of represen-

tation.[12] In light of this conclusion, we need not reach those issues in this case involving the district court's decision on the merits and the scope of review employed by the court.

The opinion of the district court is vacated with directions to dismiss for lack of jurisdiction.

---

12. We note that the National Labor Relations Board is in accord with this conclusion. In an *amicus curiae* brief filed in this case the Board urged that the sound formulation of national labor policy requires that the Board have primary jurisdiction over representational matters and that the district court has no jurisdiction to review the Board's decision in a representational proceeding or to decide these issues in this case *de novo*.