746 F.2d 1347
 117 L.R.R.M. (BNA) 1347, 102 Lab.Cas. P 11,224
 Joseph E. MORELLO, Bobby Spivey, J.P. Morgan, Sam Wilson,
Richard Woodward, Ray Bullard, and Marine Officers
Association, Teamster Local No. 43, Affiliated with the
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen, and Helpers of America, Plaintiffs-Appellants,
v.
FEDERAL BARGE LINES, INC., and The Valley Line Co.,
Defendants-Appellees.
 No. 83-2583.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1984.
Decided Oct. 24, 1984.
 
 Jerome J. Duff, St. Louis, Mo., for plaintiffs-appellants.
 Neil N. Bernstein and Thomas O. McCarthy, St. Louis, Mo., for defendants-appellees.
 Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 PER CURIAM.
 
 
 1
 The plaintiffs appeal from the district court's, 575 F.Supp. 87,[1] denial of their request for an injunction. We affirm.
 
 I. Facts
 
 2
 The individual plaintiffs in this action are members of the plaintiff Marine Officers Association Local No. 54 (MOA),[2] a labor organization located in St. Louis, Missouri. The individual plaintiffs work either for defendant Federal Barge Lines, Inc. (Federal), or defendant Valley Line Co. (Valley).
 
 
 3
 MOA has represented supervisory marine officers employed by Federal and Valley for approximately twenty years. The labor agreements between MOA and the companies were to expire on August 15, 1983, but provided that the agreements would stay in effect from year to year unless written notice of termination was served by either party upon the other at least sixty days before the expiration date. Both Federal and Valley chose to terminate their respective agreements with MOA, and mailed timely notice to that effect. MOA served notice to Federal and Valley to open negotiations. Both companies disregarded that notice apparently because they believed there was no obligation under federal law to negotiate. The labor agreements between the parties provided that all "Deck officers covered by this agreement are supervisors within the definition of supervisor as set forth in the National Labor Relations Act * * * * "[3] The National Labor Relations Act (Act) allows employers to refuse to bargain with unions representing those of their employees who are supervisors. 29 U.S.C. Sec. 164(a) (1982).[4]
 
 
 4
 MOA filed a unit clarification petition with the National Labor Relations Board (NLRB), seeking to secure a determination that MOA's members were non-supervisory employees of Valley. MOA withdrew this petition upon learning that it would be dismissed by the NLRB on the basis that the employees were supervisors within the meaning of the Act. MOA then filed an unfair labor practice charge against Valley, which was withdrawn for the same reason that the unit clarification petition had been withdrawn. MOA then filed a complaint under 29 U.S.C. Sec. 185(a) (1982)[5] in federal district court alleging that Federal and Valley had breached their respective collective bargaining agreements by refusing to negotiate over the supervisory status of their MOA member employees. MOA sought an injunction ordering Federal and Valley to negotiate.
 
 
 5
 Federal and Valley filed motions to dismiss under Fed.R.Civ.P. 12(b)(1) and (6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. The district court denied these motions. The court held that, because MOA was not seeking a determination on the supervisory status of its members but rather was alleging a breach of contract under section 301 of the Act, 29 U.S.C. Sec. 185(a) (1982), the court had jurisdiction. The court went on to hold that the collective bargaining agreements did not mandate negotiation over this dispute. We affirm, and hold that the district court did not have jurisdiction over this action.
 
 II. Discussion
 
 6
 Section 9 of the Act, 29 U.S.C. 159(b) (1982), vests jurisdiction in the NLRB to determine questions of representation. A federal court does not have jurisdiction to review directly a representation determination. Technicolor Gov't Servs., Inc. v. NLRB, 739 F.2d 323, at 326 (8th Cir.1984); Local Union 204, IBEW v. Iowa Elec. Light & Power Co., 668 F.2d 413, 416, 420 (8th Cir.1982). Rather, an aggrieved party who questions the propriety of an NLRB representation determination must do so, in the first instance, via an unfair labor practice charge brought pursuant to section 8 of the Act, 29 U.S.C. Sec. 158(a) (1982). The party then obtains judicial review of the certification determination via a review of the unfair labor practice charge under sections 10(e) or 10(f) of the Act. 29 U.S.C. Sec. 160(e) and (f). Technicolor, 739 F.2d at 327, citing Magnesium Casting Co. v. NLRB, 401 U.S. 137, 139, 91 S.Ct. 599, 600, 27 L.Ed.2d 735 (1971); Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 154, 61 S.Ct. 908, 913, 85 L.Ed. 1251 (1941); AFL v. NLRB, 308 U.S. 401, 406, 407, 409-10, 411, 60 S.Ct. 300, 304-05, 84 L.Ed. 347 (1940). See also Iowa Electric, 668 F.2d at 420.
 
 
 7
 In Iowa Electric this court refused to review a unit certification by the NLRB despite the fact that the case had been brought under section 301 of the Act which provides relief for breach of contract. 29 U.S.C. Sec. 185(a) (1982). In that case, this court stated as follows: "We believe the appropriate line between those cases where the district court has jurisdiction under 301 and those in which it does not is to be determined by examining the major issues to be decided as to whether they can be characterized as primarily representational or primarily contractual." Iowa Electric, 668 F.2d at 419.
 
 
 8
 At the center of the "dispute" in this case is the question of whether MOA members are employees or supervisors within the meaning of the Act. The question is one of representation. Admittedly, it required some creativity on the part of the MOA to find a way of circumventing entirely the procedure established for determining representation questions. Nonetheless, this dispute is on the representation side of the line drawn in Iowa Electric. MOA may not obtain indirectly that which it is precluded from obtaining directly. " 'Congress did not intend by enacting Section 301 to vest in the courts initial authority to consider and pass upon questions of representation and determination of appropriate bargaining units,' under the guise of interpreting the collective bargaining agreement." Iowa Electric, 668 F.2d at 418, quoting Local No. 3-193, Int'l Union of Woodworkers v. Ketchikan Pulp Co., 611 F.2d 1295, 1301 (9th Cir.1980). See also South Prairie Const. Co. v. Local No. 267, Int'l Union of Operating Eng'rs, 425 U.S. 800, 805-06, 96 S.Ct. 1842, 1844-45, 48 L.Ed.2d 382 (1976).
 
 
 9
 It is true that the NLRB has not ruled on the representation question at issue in this case, for MOA withdrew the unit clarification petition upon learning that the regional director would dismiss it. Instead, MOA seeks to have this court order Valley and Federal to negotiate over a question which can be determined only by the NLRB. This court has no jurisdiction to enter such an order. The Act defines the term "supervisor." 29 U.S.C. Sec. 152(11) (1982). None of the parties dispute that the MOA members are supervisors within the meaning of the Act. Congress specifically has provided that companies are free to refuse to bargain with unions which would represent supervisor employees. 29 U.S.C. Sec. 164(a) (1982); Hanna Mining Co. v. Marine Eng'rs Beneficial Ass'n, 382 U.S. 181, 189, 189 n. 12, 86 S.Ct. 327, 331, 311 n. 12, 15 L.Ed.2d 254 (1965). See generally Beasley v. Food Fair, 416 U.S. 653, 94 S.Ct. 2023, 40 L.Ed.2d 443 (1974). Further, regardless of how these employees are characterized by the parties, as long as the employees possess the power to exercise supervisory authority, they are supervisors within the meaning of the Act. See NLRB v. Harmon Indus., Inc., 565 F.2d 1047, 1049 (8th Cir.1977), quoting James H. Matthews & Co. v. NLRB, 354 F.2d 432, 434 (8th Cir.1965), cert. denied, 384 U.S. 1002, 86 S.Ct. 1924, 16 L.Ed.2d 1015 (1966). Thus, neither the district court nor this court has jurisdiction over this dispute.
 
 
 10
 Even if we had jurisdiction over this action, a federal court cannot issue an injunction ordering a company to submit to negotiations or arbitration unless the company is bound by the collective bargaining agreement to do so. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964); Atkinson v. Sinclair Ref. Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); UAW, Local No. 716 v. General Electric Co., 714 F.2d 830, 832 (8th Cir.1983); Brown v. Sterling Aluminum Prod. Corp., 365 F.2d 651, 659 (8th Cir.1966), cert. denied, 386 U.S. 957, 87 S.Ct. 1023, 18 L.Ed.2d 105 (1967). Whether a contract binds the parties to arbitration is a question of contract construction to be determined by the court. John Wiley, 376 U.S. at 546-47, 84 S.Ct. at 912-13, quoting Atkinson, 370 U.S. at 241, 82 S.Ct. at 1320; General Electric, 714 F.2d 830, 831.
 
 
 11
 The contracts entered into between the parties in this case contained a general provision regarding disputes and arbitration.[6] The arbitration provisions in the contracts contained the following caveat:Refusal of either party to submit to or appear at the grievance procedure at any stage, or failure to comply with any final decision, then, in that event both parties shall be free to pursue any other means at their disposal to support their contention. This shall include, but not be limited to, the right of the company to lock out its employees and the right of the union to strike.
 
 
 12
 (emphasis added). This provision clearly left both the companies and MOA the option to refuse to arbitrate. When this caveat is read in the context of the entire arbitration provision, it is clear that the parties had only a general agreement to discuss their differences. This type of agreement is not sufficient to compel arbitration. See Brown, 365 F.2d at 658.
 
 
 13
 MOA asks us to read this "opt-out" provision out of the contract because it violates public policy, and because its inclusion in the contract was a mistake. Contrary to MOA's first assertion, it is not against public policy to allow employers and unions to enter into collective bargaining agreements which provide means other than arbitration for negotiating labor disputes, nor does it violate public policy to hold parties to their agreements. As to the second assertion, courts of law do not sit in order to save parties from their contractual mistakes. Further, we daresay that the "opt-out" provision of the contract would not have been characterized by MOA as a mistake had the shoe been on the other foot in this case.
 
 
 14
 We hold that the district court did not have jurisdiction to hear this case, and the court should have granted the defendants' motion to dismiss for lack of subject matter jurisdiction. Accordingly, we affirm.
 
 
 
 [1]
 The Honorable Roy W. Harper, United States District Court for the Eastern District of Missouri
 
 
 [2]
 MOA is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America
 
 
 [3]
 29 U.S.C. Sec. 152(11) (1982) provides as follows:
 The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.
 
 
 [4]
 29 U.S.C. Sec. 164(a) (1982) provides as follows:
 Nothing herein shall prohibit any individual employed as a supervisor from becoming or remaining a member of a labor organization, but no employer subject to this subchapter shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining.
 
 
 [5]
 29 U.S.C. Sec. 185(a) (1982) provides as follows:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 [6]
 MOA's contracts with both Valley and Federal contained the following provision:
 "Should there arise between the Company, the Union or Company employees, individually or collectively, any dispute, difference, disagreement or grievance of whatever kind or nature, it shall in no event be the subject of lock-out, strike or work stoppage. Instead, such dispute or grievance shall be initiated within sixty (60) days and adjusted in the following manner:
 (a) Representatives of the Company and the Union shall meet and honestly endeavor to adjust, compromise, or settle said grievance. If a mutual agreement can be reached in this manner it shall be binding upon the Company, the Union and the employees of the Company.
 (b) If the matter cannot be satisfactorily adjusted through the means provided in (a) above, it shall be referred to a panel of arbitration for a decision which shall be final and binding upon the Company, the Union and the Company employees. There shall be a panel of three arbitrators, one to be designated by the Company, one to be designated by the Union, and a third or impartial member of the panel to be selected by the first two. If the first two cannot reach an agreement as the impartial arbitrator, the third member of the panel shall be designated by the presiding Judge of the District Court for the District within which the agreement is executed.
 The parties shall equally bear the expense of the arbitration proceedings and the impartial arbitrator.
 Refusal of either party to submit to or appear at the grievance procedure at any stage, or failure to comply with the final decision, then, in that event both parties shall be free to pursue any other means at their disposal to support their contention. This shall include, but not be limited to, the right of the Company to lock out its employees and the right of the Union to strike."