**CONSTRUCTION, BUILDING MATERIAL, ICE AND COAL, LAUNDRY, DRY CLEANING, AND INDUSTRIAL LAUNDRY AND DRY CLEANING DRIVERS, HELPERS, WAREHOUSEMEN, YARDMEN, SALESMEN, AND ALLIED WORKERS, LOCAL 682, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Appellants,**

**v.**

**BUSSEN QUARRIES, INC., Appellee.**

**No. 87–1431.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1987.

Decided June 23, 1988.

George O. Suggs, St. Louis, Mo., for appellants.

Mark W. Weisman, St. Louis, Mo., for appellee.

Before HEANEY and McMILLIAN, Circuit Judges, and BEAM,* District Judge.

McMILLIAN, Circuit Judge.

Construction Drivers Local Union 682 (hereinafter Local 682) appeals from a final judgment entered in the District Court for the Eastern District of Missouri dismissing its action to compel arbitration on the question of the status of owner-operator truck drivers. For reversal, Local Union 682 ar-

gues that the district court erred in (a) dismissing its complaint for lack of subject matter jurisdiction, and (b) denying its motion for summary judgment as moot. For the reasons discussed below, we affirm.

Local 682, a labor organization, and Bussen Quarries, Inc. (hereinafter Bussen), a Missouri corporation engaged in the quarrying and selling of limestone and sand, are parties to a collective bargaining agreement. The most recent collective bargaining agreement covers the March 15, 1984, to March 14, 1987, period. Under the terms of the agreement, Bussen recognizes Local 682 as the collective bargaining representative of its employees who are drivers and helpers. The agreement, however, does not apply to owner-operators when not rendering services as employees.[1]

In January 1986 and pursuant to the mandatory grievance procedures of the agreement, three individuals, Richard J. Ducote, Wayne Edlen, and Greg Edlen, filed grievances protesting Bussen's failure to place them on the seniority list. Since the filing of their grievances, Bussen has refused to proceed to arbitration. Bussen asserts that because the three individuals own their tri-axle trucks and offer hauling services to Bussen, they are independent contractors, not employees. As independent operators they are not covered by the collective bargaining agreement. Thus, Bussen argues, because they are not employees, they have no standing to grieve.

On June 24, 1986, Local 682 filed this complaint against Bussen in federal district court seeking specific enforcement of the arbitration provisions of the collective bargaining agreement. Local 682 alleged that Bussen breached the collective bargaining agreement by declining to process grievances on behalf of the three individuals.

On March 3, 1987, the district court entered an order dismissing Local 682's com-

---

* The Honorable C. Arlen Beam, Chief United States District Judge for the District of Nebraska, sitting by special designation. On November 9, 1987, Judge Beam was confirmed as a United States Circuit Judge for the Eighth Circuit.

1. Article IX, Section 2 of the 1984–1987 Agreement provides in part

It is understood and agreed that nothing herein shall apply when the following circumstances exist: ... (B) Where owner-drivers do not render their personal driving services in the status of employees.

plaint for lack of jurisdiction and denying its motion of summary judgment as moot. Bussen's cross-motion for summary judgment was also dismissed as moot. (Bussen has not cross-appealed from the dismissal of its summary judgment motion.) The district court held that the resolution of Local 682's complaint required a determination of whether the owner-operators are employees of Bussen. The district court held that question of employee status is a representational issue which can be raised only before the National Labor Relations Board (hereinafter NLRB). Consequently, the district court dismissed Local 682's complaint for lack of subject matter jurisdiction.

For reversal, Local 682 argues that its complaint seeking specific enforcement of the arbitration provisions is not a representational or labor law issue but rather an action to compel arbitration. *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). Local 682 further argues that holding the three individuals are not covered by the terms of the collective bargaining agreement usurps the power of the arbitrator. Local 682 asserts similar arguments against arbitrability have been rejected. *Ben Gutman Truck Service, Inc. v. Teamsters Local No. 600*, 636 F.2d 255 (8th Cir.1980); *see also Johnston–Tombigbee Manufacturing Co. v. Local No. 2462, United Brotherhood of Carpenters*, 596 F.2d 126, 129 (5th Cir. 1979); *Los Angeles Paper Bag Co. v. Printing Specialties and Paper Products Union*, 345 F.2d 757, 759 (9th Cir.1965). We reject Local 682's contention.

Local 682 essentially asks this court to review a representational matter. Whether the grievances fall within the scope of the arbitration clause in the bargaining agreement requires a determination of whether the grievants are employees of Bussen. Such a determination, however, is a representational issue because § 9 of the National Labor Relations Act rests jurisdiction in the NLRB to determine questions of representation. 29 U.S.C. § 159(b) (1982); e.g. *Morello v. Federal Barge Lines, Inc.*, 746 F.2d 1347, 1349–50 (8th Cir.1984). Thus, a representational issue can be raised only before the NLRB and falls within its exclusive or primary jurisdiction. *Local Union 204, Etc. v. Iowa Electric Light and Power Company*, 668 F.2d 413, 417 (8th Cir.1982) (*Iowa Electric Light*); *see also Morello v. Federal Barge Lines, Inc.*, 746 F.2d at 1349–50 (the dispute over the status of individuals as employees or supervisors held a representational question).

Local 682's attempt to have this court review the question of whether the three individuals are "employees" covered by the collective bargaining agreement is an attempt to obtain direct review of a representational matter. *Iowa Electric Light*, 668 F.2d at 416–419. A federal court does not have jurisdiction to review directly a representation issue. 29 U.S.C. § 159; *e.g.*, *Technicolor Government Services, Inc. v. NLRB*, 739 F.2d 323 (8th Cir.1984); *Iowa Electric Light*, 668 F.2d at 417; *Amalgamated Meat Cutters v. Allen*, 423 F.2d 267 (8th Cir.1970). The district court did not err in dismissing Local 682's complaint for lack of subject matter jurisdiction.

Accordingly, we affirm the order of the district court.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. We are obligated to follow the decision of the United States Supreme Court in *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). That decision requires a reversal of the district court.

In *Carey*, a union (IUE) and an employer (Westinghouse) entered into a collective bargaining agreement covering employees at several plants. Pursuant to the agreement, Westinghouse recognized IUE and its locals as the exclusive bargaining representative of those units for which the IUE and its locals had been certified as the exclusive bargaining representative by the National Labor Relations Board. The units included "all production and maintenance employees," and excluded "all salaried technical * * * employees."

The agreement also contained a grievance procedure (nearly identical to the one

at issue in this case [1]) requiring arbitration of unresolved disputes, including those involving "interpretation, application or claimed violation" of the agreement.

Pursuant to the procedure outlined in the agreement, IUE filed a grievance asserting that certain employees, represented by a different union which had been certified as the exclusive bargaining agent for a unit of "all salaried technical" employees, excluding "all production and maintenance" employees, were performing production and maintenance work. Westinghouse refused to arbitrate on the ground that the controversy involved a representation matter subject to the jurisdiction of the National Labor Relations Board. The IUE petitioned the Supreme Court of New York for an order compelling arbitration. The petition was refused. The Appellate Division affirmed.

The United States Supreme Court reversed, holding that, even though the dispute was essentially a representational one, the employer was obligated to submit it to arbitration. The Court stated:

Are we to assume that the regulatory scheme contains a hiatus, allowing no recourse to arbitration over work assignments between two unions but forcing the controversy into the strike stage before a remedy before the Board is available?

\* \* \* \* \* \*

Since § 10(k) not only tolerates but actively encourages voluntary settlements of work assignment controversies between unions, we conclude that griev-

ance procedures pursued to arbitration further the policies of the Act.

\* \* \* \* \* \*

\* \* \* [T]he existence of a remedy before the Board for an unfair labor practice does not bar individual employees from seeking damages for breach of a collective bargaining agreement in a state court \* \* \*. We think the same policy considerations are applicable here [where the question is whether the dispute must be submitted to arbitration]; and that a suit either in the federal courts, as provided by § 301(a) of the Labor Management Relations Act of 1947 (61 Stat. 156, 29 U.S.C. § 185(a)) or before such state tribunals as are authorized to act is proper, even though an alternative remedy before the Board is available, which, if invoked by the employer, will protect him.

\* \* \* \* \* \*

If by the time the dispute reaches the Board, arbitration has already taken place, the Board shows deference to the arbitral award, provided the procedure was a fair one and the results were not repugnant to the Act.

\* \* \* \* \* \*

By allowing the dispute to go to arbitration its fragmentation is avoided to a substantial extent; and those conciliatory measures which Congress deemed vital to "industrial peace" and which may be dispositive of the entire dispute, are encouraged. The superior authority of the Board may be invoked at any time.

---

**1.** Article VII of the collective bargaining agreement at issue in this case, sets forth the grievance procedures as follows:

Should differences arise between the Company and the Union or any employee of the Company *as to the meaning or application of the provisions of this Agreement,* such differences shall be settled in the following manner:

*Section 1.* The aggrieved employee or employees shall first take the matter up with the Shop Steward who in turn will take the grievance up with the foreman in charge. \* \*

*Section 2.* If no satisfactory adjustment is agreed upon, the matter shall be referred by the Union to the General Manager of the Company \* \* \*.

*Section 3.* If no satisfactory agreement has been reached pursuant to the procedure specified in Section (1) and Section (2), then the matter shall be submitted to Robert C. Sansone, President of the Union, and the Employer Representative \* \* \*.

*Section 4.* If no agreement has been reached pursuant to the procedure specified in Section (1), (2) and (3), the Union reserves the right to request arbitration of the dispute.

*Section 5.* If the grievance is submitted to arbitration the Company and the Union agree to accept the decision of the majority of an Arbitration Board \* \* \*. [Emphasis added.]

Meanwhile the therapy of arbitration is brought to bear in a complicated and troubled area.

*Id.* 375 U.S. at 264–72, 84 S.Ct. at 405–09 (footnotes and citations omitted).

This case cannot be distinguished from *Carey.* The employer, Bussen, recognized the Union as the exclusive bargaining agent for *all* its employees. *See* Collective Bargaining Agreement (CBA), Art. I, Sec. 1. The term "employee" is defined to include "all drivers and helpers, but excluding office, clerical supervisors, guards and employees covered by other union contracts." *See* CBA Art. I, Sec. 2. Work assignments are to be made pursuant to well-defined seniority rules. *See* CBA Art. IV, Sec. 3, and Art. VI. Most importantly, the agreement contains an article dealing with owner-operators.[2] It sets forth which owner-operators are to be covered by the agreement and states that the purpose of the article is to prevent the employer from

2. The agreement states:

ARTICLE IX—OWNER OPERATORS

*Section 1.* The provisions of this Article have been negotiated and agreed upon for the sole purpose of controlling circumstances which threaten maintenance of the wage structure established elsewhere in this Agreement. The objective of the parties is to protect negotiated wage scales against possible undermining through diminution of owner-operator's wages for driving which would result from a rental of their equipment to Employers covered by this Agreement for a sum or sums of money insufficient in amount to cover their operating cost. The parties seek to prohibit those leases, rentals, agreements, understandings, schemes and devices relating to owner-operator's equipment which might otherwise be utilized for the purpose of escaping full payment of wages and the assumption of working conditions commensurate with those provided for in this collective bargaining Agreement.

*Section 2.* The term "owner-operators" shall be construed to mean those persons who own, lease, rent or borrow equipment which they personally drive in the performance of their duties as employees of an Employer covered by this Agreement. It being the intention of the parties to limit the provisions of this Article to situations where owner-operators personally drive the equipment they own, lease, rent, or borrow, it is understood and agreed that nothing herein shall apply when the following circumstances exist: (A) Where an Employer covered by this Agreement leases or rents equipment from an owner thereof who does not personally drive it. (B) Where owner-drivers do not render their personal driving services in the status of employees.

*Section 3.* Subject only to the applicable provisions of this collective bargaining Agreement. Employers shall be free to lease or rent the equipment of owners and employ their personal driving services as they see fit. Nothing herein contained shall be construed to in any way obligate Employers to either lease or rent equipment or employ personal driving services not wanted or needed. Nor shall Employers be restricted in their right to lease or rent equipment from persons who are not desired as the drivers thereof.

*Section 4.* The employees on the seniority list shall not be laid off due to the Employer hiring owner-operators to haul materials either to the Employer's yard or for the Employer's account when the Employer has useable and appropriate equipment available for such work.

It is agreed that a duly authorized officer of Local Union No. 682 shall have the privilege, in conjunction with the Employer, in determining the application of the aforementioned clause "Useable and appropriate equipment". Further, the Employer agrees that said owner-operator is an employee, as defined herein, and said employee is to drive his own truck at request of Employer. Further, Employers shall make all arrangements necessary to establish a relationship of Employer and employee between themselves and the person who personally drives the said leased or rented equipment except in the case of a person operating as a bona fide subcontractor.

\* \* \* \* \* \*

*Section 11.* In the rendition of their personal driving services owner-operators shall constitute a part of the collective bargaining unit covered by this Agreement and their wages, hours of work and terms and conditions of employment shall be governed and regulated by all applicable provisions of the entire labor contract as with other employees. They shall be compensated for their employee driving services by the issuance of separate checks which shall neither contain nor make reference to any items of account other than wages earned, compensation due under other articles of this Agreement, and deductions for withholding and social security taxes or other deductions required by law or by applicable provisions of this Agreement.

*Section 12.* It is further agreed that the Employer will neither advise, put into operation, participate or acquiesce in, nor permit to continue any arrangements or schemes, whether herein enumerated or not, which are contrary to the provisions of this Article or which tend to interfere with the aims and objectives described in Section 1 hereof.

*Section 13.* The grievance and arbitration procedures provided for elsewhere in this Agreement shall apply to the terms and provisions of this Article.

undermining negotiated wage scales through diminution of owner-operators' wages for driving. The term "owner-operator" is defined as "those persons who own, lease, rent or borrow equipment which they personally drive in the performance of their duties as employees of an Employer covered by the agreement." CBA Art. IX, Sec. 2.

Three owner-operators, Richard J. Ducote, Wayne Edelen and Greg Edelen, claimed entitlement to protection under the collective bargaining agreement and filed a grievance. The company rejected the grievance, claiming the grievants had never been covered by the agreement and were not entitled to be covered. The Union requested arbitration and Bussen refused, taking the position that the Union was attempting to extend the bargaining unit beyond that provided for in the agreement. In addition, Bussen claimed that the issue concerned representation to be decided by the NLRB and not the arbitrator. Bussen's arguments are exactly the same as those made by the employer in *Carey* and rejected by the Supreme Court.

Neither the district court nor this Court should decide whether the Union is improperly attempting to extend the unit beyond that described in the collective bargaining agreement, as Bussen claims, or whether the grievants are owner-operators covered by the agreement, as the Union claims. The question for the courts is whether the parties must arbitrate the matter. If the arbitrator agrees with Bussen, the dispute is over. On the other hand, if the arbitrator agrees with the Union, Bussen could, in the words of the Supreme Court, invoke the "superior authority" of the National Labor Relations Board. *Carey* 375 U.S. at 272, 84 S.Ct. at 409. But as *Carey* holds, characterizing a dispute as representational does not deprive an arbitrator of jurisdiction where the collective bargaining agreement requires the parties to submit all disputes, including those involving application of the agreement, to arbitration.

The majority cites *Local Union 204 of International Brotherhood of Electrical Workers v. Iowa Electric Light and Power Company,* 668 F.2d 413 (8th Cir.1982), and *Morello v. Federal Barge Lines, Inc.,* 746 F.2d 1347 (8th Cir.1984) as controlling precedent in this case. Neither case, however, is applicable.

In *Iowa Electric,* Judge Ross, writing for the majority, stated:

> *Carey* has been consistently interpreted to support district court jurisdiction under section 301 of the LMRA over suits to compel arbitration of a representational dispute *where the parties have agreed under the collective bargaining agreement to arbitrate such matters.* In the instant case, the Union did not bring suit under section 301 for breach of the contract arbitration clause.

668 F.2d at 419 (citations omitted).

Here, the parties specifically agreed to arbitrate matters involving the application of the collective bargaining agreement to owner-operators. They must be held to their bargain, subject only to the employer's right to invoke the jurisdiction of the Board in an appropriate case.

Similarly, the Court in *Morello,* addressing the issue whether certain employees fit within the statutory definition of "supervisor," emphasized that the relevant collective bargaining agreement did not require the parties to submit disputes to mandatory and binding arbitration. The arbitration provision in *Morello* stated:

> Refusal of either party to submit to or appear at the grievance procedure *at any stage,* or failure to comply with any final decision, then, in that event *both parties shall be free to pursue any other means at their disposal* to support their contention. This shall include, but not be limited to, the right of the company to lock out its employees and the right of the union to strike.

746 F.2d at 1351.

The Court found that the provision represented "only a general agreement to discuss their differences," and "left both the companies and [the union] the option to refuse to arbitrate." *Id.* Thus, *Iowa Electric* and *Morello* are distinguishable because the underlying collective bargaining agreements in those cases did not require

the parties to submit the disputes to arbitration.

In contrast, *Ben Gutman Truck Service, Inc. v. Teamsters Local No. 600*, 636 F.2d 255 (8th Cir.1980) (per curiam), involved a situation nearly identical to this case. In that case, Ben Gutman, the sole owner and president of Ben Gutman Truck Service, Inc., invested in a new trucking company, National Distributing Co. (NDC). The formation of NDC coincided with layoffs at Gutman Trucking. Subsequently, laid-off Gutman Trucking employees filed grievances alleging that NDC employees, who were not members of the Gutman Trucking employees' union, were performing work traditionally performed by Gutman Trucking employees, in violation of several provisions of the applicable collective bargaining agreement. Gutman Trucking then brought an action in district court seeking injunctive and declaratory relief from grievance procedures invoked by the Union. The district court denied relief on the ground that the grievances stated claims properly subject to arbitration.

On appeal to this Court, Gutman Trucking argued that the dispute was actually over representation of NDC's employees and was not subject to arbitration because the collective bargaining agreement specifically excluded representational matters from the grievance procedures. This Court rejected Gutman's argument finding that "the grievances state claims which fall within the grievance procedures set forth in the agreements." *Id.* Thus, in the only case directly on point, a panel of this Court was faithful to the mandate of *Carey*. This panel should also be faithful to that mandate.