**IOWA ELECTRIC LIGHT AND POWER COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Local Union No. 204 of the International Brotherhood of Electrical Workers AFL–CIO, Intervenor.

No. 82–2262.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1983.

Decided Sept. 12, 1983.

William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.

R.B., Howard E. Perlstein, Frederick Havard, Attys., N.L.R.B., Washington, D.C., for N.L.R.B.

Joseph E. Day, Hines, Pence, Day & Powers, Cedar Rapids, Iowa, for intervenor Union.

Robert D. Kurnick, Sherman, Dunn, Cohen, Leifer & Counts, P.C., Washington, D.C., for Intern. Broth. of Elec. Workers, amicus curiae.

William Douglas, Iowa Elec. Light and Power Co., D.G. Ribble, Lynch, Dallas, Smith & Harman, Cedar Rapids, Iowa, for petitioner.

Edward E. Shumaker, III, Gallacher, Callahan & Gartell, Concord, N.H., of counsel, for Public Service Co. of New Hampshire.

Richard J. Shea, Ellen C. Kearns, Kearns & Shea, Boston, Mass., for amici curiae.

Before LAY, Chief Judge, and HENLEY and BROWN,* Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

This is a petition for review of an order of the National Labor Relations Board (NLRB) by Iowa Electric Light and Power Company, and a cross-petition for enforcement of the order by the NLRB. The issue is whether Quality Control Inspectors at Iowa Electric's nuclear power plant are employees or managers-supervisors. We enforce the Board's order.

Iowa Electric employs three Quality Control Inspectors at its Duane Arnold Energy Center, a nuclear power plant. Iowa Electric and Local 204 of the International Brotherhood of Electrical Workers (the Union) have a collective bargaining agreement covering production and maintenance employees. The Union petitioned the NLRB to add Quality Control Inspectors to the bargaining unit. The petition was opposed by Iowa Electric on the ground that the Inspectors were supervisors. After a hearing the Regional Director found that the Inspectors were employees, not managers or supervisors, and ordered an election. The Union won, but Iowa Electric refused to bargain with the Union concerning the Inspectors. The Union brought suit in federal district court against Iowa Electric under the Labor Management Relations Act, but the case was dismissed on appeal for lack of jurisdiction. *Local Union 204 v. Iowa Electric Light & Power Co.*, 668 F.2d 413 (8th Cir.1982). The Union then charged Iowa Electric with a violation of the National Labor Relations Act (the Act), and the NLRB found that Iowa Electric had engaged in unfair labor practices in violation of § 8(a)(5) of the Act. 29 U.S.C. § 158(a)(5). The NLRB ordered Iowa Electric to bargain with the Union. It is that order which is now before the court.

■ All employees properly characterized as "managerial" are excluded from the protections of the Act. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 289, 94 S.Ct. 1757, 1769, 40 L.Ed.2d 134 (1974). Managerial employees are those who "formulate and effectuate management policies by expressing and making operative the decisions of their employer." *Id.* at 288, 94 S.Ct. at 1768. "[N]ormally an employee may be excluded as managerial only if he represents management interests by taking or recommending discretionary actions that effectively control or implement employer policy." *NLRB v. Yeshiva University*, 444 U.S. 672, 683, 100 S.Ct. 856, 862, 63 L.Ed.2d 115 (1980).

■ Nor are supervisors covered by the Act. 29 U.S.C. § 152(3). An employee is declared by the Act to be a supervisor if he or she has authority to "hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action," provided the exercise of such activity "is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C. § 152(11). Authority to do only one of

---

* The Honorable Bailey Brown, United States Senior Circuit Judge for the Sixth Circuit, sitting by designation.

these listed acts is enough to make an employee a supervisor. *NLRB v. St. Mary's Home, Inc.,* 690 F.2d 1062, 1065 (4th Cir. 1982); *NLRB v. Sayers Printing Co.,* 453 F.2d 810, 814 (8th Cir.1971).

The Board found that the Quality Control Inspectors "are responsible for performing inspection, examination, and testing activities that assure the quality and safety of a nuclear power plant. The Inspectors determine whether the materials, supplies, components, systems and processes conform to the predetermined quality requirements so as to insure safe, efficient and reliable plant performance." The Board found that the Inspectors used checklists in making these inspections, and that they had no authority to vary the terms of those checklists. Thus, the Board considered the decisions of the Quality Control Inspectors to be "primarily technical in nature and limited by pre-existing established policy."

■ Iowa Electric challenges the Board's findings on three grounds. First, it argues that because an inspection can result in changes in working assignments, Quality Control Inspectors "assign work" as that term is used in the definition of supervisor. Second, it argues that because reports written by Inspectors are used in the disciplinary process against other employees, Quality Control Inspectors discipline other employees. Third, Iowa Electric argues that the job description of Quality Control Inspectors which is written by the Nuclear Regulatory Commission requires that Quality Control Inspectors have leeway and freedom to correct mistakes and take preventive action. In addition to these arguments, a conflict of interest argument has been put forth by other utility companies in an amicus curiae brief. We will examine each argument in turn, in view of the large measure of discretion exercised by the Board in determining whether or not employees are supervisors or managers. *NLRB v. Broyhill Co.,* 514 F.2d 655, 658 (8th Cir.1975).

■ Part of a Quality Control Inspector's job is to examine conditions at certain "hold points." Hold points are established pursuant to government regulations, and are levels at which activity is halted until an inspector determines that the necessary specifications and criteria have been met. If the criteria are found not to have been met, work cannot continue until the deficiency is corrected. If the deficiencies are serious enough, the plant may be shut down.

Iowa Electric argues that when an Inspector finds that criteria are not met, he is "effectively" assigning work, since corrections must be performed and usual activity is halted until the corrections are made. Iowa Electric stresses the possibility that the plant could be shut down as a result of an Inspector's decision that something is wrong. Iowa Electric argues that because Inspectors "effectively assign work," they are supervisors as defined by the Act.

The Board found that the Inspectors have no authority or discretion to change or waive the acceptance criteria at the hold points. Their "decisions" are merely that the criteria are not met, not that work must stop or that the plant must be shut down. Further, the Inspectors themselves do not order the corrective work; they merely report the deficiency to the Quality Supervisor, who decides what corrections must be made. The Board found that corrective action and the halting of work are part of the process rather than consequences of an Inspector's independent decision. These findings support the Board's conclusion that Inspectors do not assign or direct work.

Iowa Electric's second argument is that Inspectors initiate the disciplinary process against other employees. When an Inspector finds something amiss at a hold point, he fills out a Material and Activities Occurrence Report (MAOR). The MAOR may be used in determining whether any employee should be disciplined as a result of the problem identified in the MAOR. Iowa Electric

contends that because the MAOR may be used in evaluating the performance and disciplining of other employees, Inspectors who write the MAORs are supervisors.

The Board found that Inspectors do not recommend that employees be disciplined; the main purpose of the MAOR is to point out a deficiency, not to point out who has made a mistake. Further, the Inspectors play no further role in any disciplinary decisions. This evidence provides substantial support for the Board's conclusion that the Inspectors do not discipline employees and thus are not supervisors.

Iowa Electric's third argument is that the Board's decision ignores NRC regulations which require that Inspectors have a good deal of authority, and that the degree of authority required by those regulations makes the Inspectors managers.

The regulations referred to by Iowa Electric provide in part that

[t]he persons and organizations performing quality assurance functions shall have sufficient authority and organizational freedom to identify quality problems; to initiate, recommend, or provide solutions; and to verify implementation of solutions.

10 C.F.R. Part 50, Appendix B at 455. Iowa Electric contends that its Quality Control Inspectors are "persons ... performing quality assurance functions" within the meaning of the regulation, and that the NLRB's finding that the Inspectors are not managers is inconsistent with this regulation.

We do not agree. As the NLRB points out in its brief, the regulations do not require that Quality Control Inspectors have this "authority and freedom;" rather, the regulations provide substantial leeway in organizational structure, as long as someone involved in quality assurance and control has the required authority. At Iowa Electric this authority is lodged with the Quali-

ty Supervisor, not the Inspectors. The Quality Supervisor has daily meetings with the Senior Vice President to discuss the department's activities, and also meets regularly with the Chief Engineer. Further, it is the Quality Supervisor who evaluates MAORs and decides what corrective action should be taken. Inspectors possess no comparable organizational authority. They do not meet regularly with the Supervisor, and none has ever met with the Vice President. They do make suggestions for changes, but they do not have the authority to implement those changes without approval. We do not view the NLRB's decision as inconsistent with NRC regulations, because Iowa Electric itself has elected to vest the authority required by the NRC in the Quality Supervisor, not the Quality Control Inspectors.

The amicus curiae brief filed in this case by other utilities points out the possibility of a conflict of interest, since Quality Control Inspectors will be inspecting work done by fellow union members. The amici urge that Quality Control Inspectors may allow their desire not to get fellow union members into trouble to outweigh their job duties, to the detriment of plant safety.

The Regional Director expressly found no conflict of interest. He relied upon *Bechtel, Inc.*, 225 NLRB 197 (1976), in which the Board held that when the employer had a "substantial degree of control over the work performance of the inspectors," inspectors were not managers. The Board concluded that there was "no basis for presuming that representation ... will result in an impairment of performance of their duties." In this case, as in *Bechtel*, the Quality Control Inspectors are carefully supervised. Further, disciplinary action does not always result from an MAOR. Finally, there is nothing in the record to suggest that the Inspectors would ignore mistakes or insufficiencies. In light of their sure knowledge of the potentially deadly consequences of overlooking mistakes, we cannot

assume that the Inspectors would be callously irresponsible.

█ The Board's decision must be upheld if it is supported by substantial evidence. *NLRB v. Sayers Printing Co.*, 453 F.2d at 815. In this case, there is substantial evidence that Quality Control Inspectors do not have supervisory or managerial jobs; their decision-making is of a technical nature and is limited by pre-established policy; they do not order specific corrections when mistakes are discovered; they have no authority to hire, fire, or discipline other employees; and they have little contact with management. While we recognize that there is also some support for a contrary conclusion, we do not consider that it is our role to draw the line; that is the role of the NLRB. The order of the NLRB is therefore enforced.