885 F.2d 436
 132 L.R.R.M. (BNA) 2391, 112 Lab.Cas. P 11,431
 BELL COLD STORAGE, INC., a Minnesota corporation, Appellant,
v.
OVER-THE-ROAD TRANSFER, COLD STORAGE, GROCERY & MARKET
DRIVERS, HELPERS & INSIDE EMPLOYEES UNION, LOCAL
NO. 544, Appellee.
 No. 88-5011.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 20, 1988.
Decided Sept. 11, 1989.
 
 David J. Duddleston, Minneapolis, Minn., for appellant.
 Martin J. Costello and Carol Baldwin, St. Paul, Minn., for appellee.
 Before ARNOLD and MAGILL, Circuit Judges, and ROSS, Senior Circuit Judge.
 ROSS, Senior Circuit Judge.
 
 
 1
 Appellant Bell Cold Storage, Inc. (Bell) appeals from the district court's order[1] denying Bell's motion to vacate an arbitration award requiring Bell to complete arbitration on the merits of a grievance filed by appellee Over-the-Road Transfer, Cold Storage, Grocery & Market Drivers, Helpers & Inside Employees Union, Local No. 544 (Union) 673 F.Supp. 987. Based on the following discussion, we affirm.[2]
 
 I.
 
 2
 Bell owns and operates cold storage warehouses in Minnesota. During the summer of 1985, the Union and Bell were engaged in collective bargaining negotiations covering employees at Bell's Minneapolis facility. At that time, in addition to the Minneapolis warehouse, Bell also operated a facility in St. Paul, represented by a different Teamster local. A third warehouse in Brooklyn Park, Minnesota was then under construction. During the negotiations for the Minneapolis facility, the parties discussed, but did not reach agreement on union recognition or transfer rights to the Brooklyn Park facility. The Brooklyn Park facility opened on October 8, 1985 and was staffed by non-union employees. Shortly thereafter, on October 23, 1985, the new Minneapolis collective bargaining agreement was ratified, effective to May 1, 1988, and provided for binding arbitration over any dispute involving the interpretation or application of the agreement.
 
 
 3
 Several months later, in January and February 1986, the Union filed grievances under the Minneapolis contract arbitration provision, demanding that the Minneapolis agreement be extended to the non-union facility at Brooklyn Park. When those grievances were denied by Bell, the Union petitioned for arbitration under the Minneapolis agreement. Bell refused to arbitrate the grievances. On April 16, 1986, the Minneapolis facility was closed. The following month the Union filed suit in Minnesota district court seeking an order to compel Bell to arbitrate. The Union's motion was heard on August 21, 1986, and on September 10, 1986 the state court judge granted the Union's motion to compel arbitration. This decision was not appealed apparently because under Minnesota law it was not a final appealable order.
 
 
 4
 Meanwhile, on August 13, 1986, just prior to the state court hearing, Bell filed an employer's representation petition with the National Labor Relations Board (NLRB or Board). On September 2, 1986 the Union filed an unfair labor practice charge with the NLRB, claiming that Bell had violated sections 8(a)(1), (3) and (5) of the National Labor Relations Act (the Act), 29 U.S.C. Sec. 158(a)(1), (3) and (5), by closing its Minneapolis facility and moving its operations to Brooklyn Park, laying off its Minneapolis employees and refusing to transfer them to the Brooklyn Park facility, and for refusing to arbitrate the Union's grievances.
 
 
 5
 On October 16, 1986, Board Regional Director Ronald M. Sharp issued an order dismissing Bell's representation petition. The Regional Director found that the Union's claim that its contract with Bell applied to the Brooklyn Park facility constituted a demand for accretion and not a demand for representation. The Regional Director dismissed the petition, concluding that a demand for accretion does not raise a question concerning representation within the meaning of the Act. Bell did not seek review of this order by the NLRB as it could have done at that time.
 
 
 6
 Prior to this formal dismissal, on October 7, 1986, a Board field examiner sent a letter to Bell in which she requested that the representation petition be withdrawn. The letter also stated that the Regional Director had determined that the Union's unfair labor practice charge lacked merit based on a finding "that the Brooklyn Park facility was not an accretion to the Minneapolis bargaining unit, and therefore the contract did not apply and no bargaining obligation exists."
 
 
 7
 Thereafter on October 20, 1986, Regional Director Sharp issued a formal letter to the Union dismissing its unfair labor practice charge. The only reason stated in the October 20 letter for the Director's refusal to issue a complaint was that "there is insufficient evidence that [Bell] * * * refused to arbitrate grievances concerning its Brooklyn Park facility; or refused to negotiate with the Union in violation of the Act, as alleged."
 
 
 8
 On November 21, 1986, the Union notified the Board's General Counsel that due to the Union's victory in the state and federal litigation which would require Bell to arbitrate grievances which cover the same subject matter as the NLRB proceedings, the Union chose to pursue the matter through arbitration and further NLRB proceedings would be unnecessary. Therefore, the Board was not asked to review the dismissal of the unfair labor practice charge.
 
 
 9
 Following other procedural actions, including a petition to remove into federal district court brought by Bell on October 14, 1986, arbitration was held on April 20, 1987. After some dispute about the timing and format of the arbitration hearing, the parties agreed to a bifurcated hearing, first to resolve challenges to arbitrability and, second, to determine the merits of the grievances. On May 26, 1987, following a hearing on the issue of arbitrability, the arbitrator determined that the grievances were arbitrable and that the matter should proceed to a hearing on the merits.
 
 
 10
 Without awaiting a decision on the merits, Bell filed suit in federal district court to vacate the arbitration award and to enjoin arbitration of the merits of the grievance. The union opposed the motions, seeking dismissal of the claims as well as a declaration that the dispute was arbitrable.
 
 
 11
 On November 16, 1987, the federal district court issued a memorandum opinion and order denying Bell's motion to vacate the arbitration award. The court rejected Bell's argument that the dispute between the parties is a representational matter which is controlled by the Act and should be resolved only by the Board. The court further noted that the Board had already decided the representational issue based on its finding that the Union's demand was more like an accretion than a demand for recognition. The court also denied the Union's motion to confirm the arbitration award as the arbitrability issue is not reviewable until the arbitrator decides the entire matter. Appeal to this court followed.
 
 II.
 
 12
 Two primary questions are presented on appeal: one, whether the Board has already decided whether the collective bargaining agreement should be extended to cover the Brooklyn Park facility, thereby precluding arbitration of the same issue, and two, assuming this issue has not been decided, whether state court arbitration of the issue is precluded by section 9 of the National Labor Relations Act, 29 U.S.C. Sec. 159. An examination of the existing case law is necessary before addressing the merits of Bell's claims.
 
 
 13
 Under section 9 of the Act, "[t]he Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof." 29 U.S.C. Sec. 159(b). This section confers broad discretion on the Board to determine appropriate bargaining units. Such representation decisions by the Board are generally not directly reviewable in federal court but only indirectly under the review procedures provided by sections 10(e) and (f) of the Act, 29 U.S.C. Sec. 160(e) and (f), for review of unfair labor practice orders. Local 204, Intern. Broth. of Elec. Workers v. Iowa Elec. Light & Power Co., 668 F.2d 413, 420 (8th Cir.1982) (Iowa Electric); Morello v. Federal Barge Lines, Inc., 746 F.2d 1347, 1349 (8th Cir.1984).
 
 
 14
 Notwithstanding the delegation of authority to the Board in bargaining unit determinations, certain representational issues can be the subject of arbitration where the collective bargaining agreement provides for mandatory arbitration. See Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964); Iowa Electric, supra, 668 F.2d at 419. The Board, however, is not subsequently bound by an arbitrator's findings on a representation issue. Indeed, the Board has consistently refused to defer to a prior representation decision by an arbitrator. See, e.g., Hershey Foods Corp., 208 NLRB 70 (1974); Combustion Engineering, Inc., 195 NLRB 909, 910-11 (1972); Woolwich, Inc., 185 NLRB 783, 784 (1970).
 
 
 15
 While it is true that representation issues may properly be the subject of arbitration, it is equally clear that where the Board has previously resolved a "dispositive representational issue," the courts will not compel parties to subsequently arbitrate the same question. See, e.g., Iowa Electric, supra, 668 F.2d at 419 n. 11; Yellow Freight Systems, Inc. v. Automobile Mechanics Local 701, 684 F.2d 526, 530 (7th Cir.1982).
 
 III.
 
 16
 Within this legal framework, we now examine the case before us. Bell first argues that in dismissing the representation petition, the Board has resolved a "dispositive representational issue," and this court cannot compel the parties to arbitrate the same question.
 
 
 17
 In the October 16, 1986 order dismissing the representation petition, the Regional Director held that "the Union's claim that its contract applied to the Employer's Brooklyn Park facility constitutes a demand for an accretion rather than a demand for recognition; and that a demand for an accretion does not raise a question concerning representation within the meaning of the Act." The Regional Director made no finding as to whether there actually was or was not an accretion at the Brooklyn Park facility.
 
 
 18
 Bell's position that the Board has decided the "dispositive representational issue" is apparently based on an October 7, 1986 letter to Bell by a Board field examiner. In the letter, the field examiner stated that the Regional Director had found that the Union's unfair labor practice charge lacked merit and would be dismissed absent withdrawal. The letter noted that the basis for the decision as to the unfair labor practice charge was "a finding that the Brooklyn Park facility was not an accretion to the Minneapolis bargaining unit, and therefore the contract did not apply and no bargaining obligation exists." The field examiner stated further that "[i]n the event of dismissal [of the charge], all parties will receive a copy of the dismissal letter setting forth the reasons for dismissal."
 
 
 19
 On October 20, 1986, a subsequent letter from the Regional Director was sent to inform the Union that, in regard to the Union's unfair labor practice charge, the Regional Director was "refusing to issue Complaint in this matter." The letter stated:
 
 
 20
 As a result of the investigation, it appears that there is insufficient evidence that the Employer laid off employees at its Minneapolis, Minnesota facility and refused to rehire them or allow them to transfer to its Brooklyn Park, Minnesota facility because of their Union membership; or closed its Minneapolis facility for the purpose of avoiding its bargaining obligation with the Union; or refused to arbitrate grievances concerning its Brooklyn Park facility; or refused to negotiate with the Union in violation of the Act, as alleged. Accordingly, further proceedings are not warranted at this time, and I am, therefore, refusing to issue Complaint in this matter.
 
 
 21
 Contrary to the field examiner's earlier prediction as to the basis of the Regional Director's decision, there was no finding whatsoever by the Director regarding accretion or application of the collective bargaining agreement.
 
 
 22
 Congress delegated to the General Counsel "final authority, on behalf of the Board" to investigate and issue or refuse to issue complaints under section 10 of the Act, 29 U.S.C. Sec. 160. It has been established, however, that such a discretionary decision of the General Counsel, acting through the Regional Director, is not a final order of the Board as contemplated by the Act. Miller Brewing Co. v. Brewery Workers Local No. 9, 739 F.2d 1159, 1166 (7th Cir.1984), cert. denied, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985). A regional director's decision refusing to issue a complaint "does not act as res judicata or bar a party from seeking arbitration under the collective bargaining agreement." Edna H. Pagel, Inc. v. Teamsters Local No. 595, 667 F.2d 1275, 1279-80 (9th Cir.1982).
 
 
 23
 Bell cites no authority in support of its position that any binding effect can or should be given to a field examiner's preliminary correspondence regarding matters that were ultimately omitted from the Regional Director's final decision. Indeed, the Board itself, in its amicus curiae brief, stated that the preliminary correspondence of the field examiner was not a final decision of the Board which carried with it any binding or precedential effect.
 
 
 24
 Because we find that the Board has not determined whether the Union is the appropriate collective bargaining representative at the Brooklyn Park facility, we conclude that the instant suit falls within the category of cases which has interpreted Carey as allowing suits to compel contractually authorized arbitration even as to matters that, in whole or in part, implicate representation issues. See Retail Clerks Local 588 v. NLRB, 565 F.2d 769, 778 (D.C.Cir.1977); Iowa Electric, supra, 668 F.2d at 419.
 
 
 25
 In Carey v. Westinghouse Electric Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), a union filed a section 301 suit to compel arbitration under a collective bargaining agreement. The case arose out of a jurisdictional dispute between two unions as to which union was the appropriate bargaining representative for a certain group of employees. The employer refused to arbitrate what it considered to be a purely representational matter. Id. at 262, 84 S.Ct. at 404. The union's petition for an order compelling arbitration was denied by a state court on the basis of the Board's alleged exclusive jurisdiction over unit disputes.
 
 
 26
 In reversing, the Supreme Court held that although the dispute involved a representational issue, it could be the subject of arbitration, reasoning that arbitration "is proper, even though an alternative remedy before the Board is available, which, if invoked by the employer, will protect him." Id. at 268, 84 S.Ct. at 407. The Court suggested that although the dispute may ultimately come before the Board, prior "resort to arbitration may have a pervasive, curative effect" and will encourage "those conciliatory measures which Congress deemed vital to 'industrial peace' and which may be dispositive of the entire dispute." Id. at 272, 84 S.Ct. at 409. See also International Ass'n of Machinists and Aerospace Workers v. International Air Service of Puerto Rico, Inc., 636 F.2d 848, 849-50 (1st Cir.1980) ("No prejudice will result from allowing an arbitrator to clear up the factual and contractual underbrush and, perhaps, remove any need to consider the statute."). The Supreme Court observed, however, that if the Board subsequently disagreed with the arbitrator's decision, "the Board's ruling would, of course, take precedence" and "[t]he superior authority of the Board may be invoked at any time. Meanwhile the therapy of arbitration is brought to bear in a complicated and troubled area." Carey, supra, 375 U.S. at 272, 84 S.Ct. at 409.
 
 
 27
 In subsequent cases, courts have found that a decisive factor in the Carey decision was the "very strong policy favoring the invocation of arbitration to resolve all kinds of labor disputes under collective bargaining agreements providing for arbitration." Local 3-193, Int'l Woodworkers v. Ketchikan Pulp Co., 611 F.2d 1295, 1298 (9th Cir.1980). Our court has interpreted Carey as supporting "district court jurisdiction under section 301 * * * to compel arbitration of a representational dispute where the parties have agreed under the collective bargaining agreement to arbitrate such matters." Iowa Electric, supra, 668 F.2d at 419 (emphasis in original) (citing International Air Service of Puerto Rico, Inc., supra, 636 F.2d at 849-50; Retail Clerks Local 588 v. NLRB, supra, 565 F.2d at 777-78). In the absence of a collective bargaining agreement providing for arbitration, however, courts have generally refused to apply Carey as a means of compelling arbitration of a representation issue. See Ketchikan Pulp, supra; Iowa Electric, supra, 668 F.2d at 419.
 
 
 28
 In the instant case the parties have agreed to mandatory arbitration of any dispute involving the interpretation or application of the collective bargaining agreement. Based on our interpretation of Carey and its progeny, we conclude that section 9 of the National Labor Relations Act does not preclude a state court from compelling arbitration of the issue of whether the Minneapolis agreement is properly extended to the employees at the Brooklyn Park facility.[3] We of course make no determination as to whether or not the contract entitles the Union to its requested relief. This will be determined in the first instance by the arbitrator.
 
 
 29
 Accordingly, the judgment of the district court is affirmed.[4]
 
 
 
 [1]
 The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota
 
 
 [2]
 Bell alleged district court jurisdiction under Section 301 of the National Labor Relations Act, 29 U.S.C. Sec. 185, on the grounds of an alleged violation of a contract between Bell and the Union, and 28 U.S.C. Sec. 2201 of the Declaratory Judgment Act. Jurisdiction of this court is invoked pursuant to 28 U.S.C. Sec. 1291 and 28 U.S.C. Sec. 1292(a)(1)
 
 
 [3]
 The cases cited by Bell in support of its position that section 9 precludes compelled arbitration of an accretion issue are inapposite. In each of these cases the Board had either previously ruled dispositively on the representation issue, see NLRB v. Paper Manufacturers Co., 786 F.2d 163, 165-66 (3d Cir.1986); Yellow Freight Systems, Inc. v. Automobile Mechanics Local 701, 684 F.2d 526, 530, or the parties were not bound to a collective bargaining agreement which contained an arbitration clause. See Local 204, Intern. Broth. of Elec. Workers v. Iowa Elec. Light & Power Co., 668 F.2d 413, 419; Morello v. Federal Barge Lines, Inc., 746 F.2d 1347, 1350-51
 
 
 [4]
 This decision, of course, is without prejudice to the assertion by Bell or the Union, after the arbitration is complete, of whatever rights either of them may have before the NLRB or in the courts