**COPPS FOOD CENTER, INC., Plaintiff,**

v.

**UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL NO. 73A, Defendant.**

**No. 89–C–153–C.**

United States District Court, W.D. Wisconsin.

March 21, 1990.

Jack D. Walker, Melli, Walker, Pease & Ruhly, Madison, Wis., for plaintiff.

William Haus, Kelly and Haus, Madison, Wis., for defendant.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil action brought by plaintiff Copps Food Center, Inc., to enforce an agreement with defendant United Food & Commercial Workers Union, Local No. 73A, in which the Union allegedly agreed to file representation petitions only for "wall-to-wall" bargaining units in plaintiff's food centers. Plaintiff contends that defendant breached this agreement by petitioning the National Labor Relations Board to certify departmental bargaining units for the meat departments in two of plaintiff's stores.

In a motion for summary judgment before this court, plaintiff argued that the parties' agreement, memorialized in a letter written by defendant's counsel to plaintiff's counsel on June 8, 1988, constitutes a contract between an employer and a union

representing employees that is enforceable in federal court under § 301(a) of the Labor–Management Relations Act, 29 U.S.C. § 185(a). On a cross-motion for summary judgment, defendant argued that the agreement did not constitute an enforceable contract under § 301 and argued in the alternative that enforcement of the agreement would improperly interfere with the National Labor Relations Board's primary jurisdiction over representational issues.

In an order entered October 19, 1989, I denied plaintiff's motion for summary judgment and granted defendant's motion for summary judgment. I concluded that if the agreement were an enforceable contract, it fell within the parameters of § 301 jurisdiction. I expressed doubt that the letter would indeed be found to be an enforceable contract, but held that the question could not be resolved on a motion for summary judgment because it involved disputed facts about the intentions of the parties. I concluded that this factual dispute did not preclude entry of judgment in favor of defendant because enforcement of the agreement would interfere with the National Labor Relations Board's primary jurisdiction over the representational issues in this case. I concluded also that plaintiff's suit was frivolous and was brought only for the improper purpose of evading the effect of the NLRB's determination that departmental bargaining units were appropriate. Therefore, I imposed sanctions under Fed.R.Civ.P. 11.

This case is now before the court on plaintiff's motion to alter or amend the judgment against it. Plaintiff argues first that the court's invocation of the primary jurisdiction doctrine was inappropriate in this case. Second, plaintiff contends that even if it was appropriate for the court to defer to the primary jurisdiction of the NLRB, the proper course of action was to enter a stay of proceedings in this case pending the outcome of proceedings before the NLRB. Finally, plaintiff contends that its suit was neither frivolous nor brought for improper purposes and that Rule 11 sanctions are unwarranted.

Upon further examination and analysis of the law governing this case, I conclude that it was appropriate to decline to exercise § 301 jurisdiction in deference to the primary jurisdiction of the NLRB over representational issues. Because it would be improper to interfere with the Board's authority at any stage of the proceedings, I will deny plaintiff's motion to enter a stay rather than dismissing this case. However, because of the complexity and uncertainty inherent in this area of the law, I conclude now that it was not unreasonable for plaintiff to seek enforcement of its agreement in this forum. Therefore, I will vacate the Rule 11 sanctions imposed by the order of October 19, 1989.

In the October 19, 1990 opinion, I made findings of fact based on proposed findings submitted by the parties. I repeat here those facts that are relevant to plaintiff's motion to alter or amend judgment.

## FACTS

Plaintiff is a corporation organized under the laws of the State of Wisconsin. It operates retail supermarkets throughout the state, as well as warehouse, production and distribution facilities related to its retail supermarket operations. It is engaged in industry affecting commerce within the meaning of Section 2 of the National Labor Relations Act. 29 U.S.C. § 152.

Defendant is a labor organization in an industry affecting commerce within the meaning of 29 U.S.C. § 152.

Since 1987, defendant has been involved in organizing employees at various facilities owned by plaintiff. In early 1988, defendant filed several representation petitions with Region 30 of the National Labor Relations Board, requesting that elections be held among certain employees of plaintiff's food stores in Green Bay, Stevens Point, and Appleton, Wisconsin. Defendant filed an unfair labor practice charge with the NLRB, contending that plaintiff had committed unfair labor practices in opposing defendant's organizing efforts. Defendant also filed a petition requesting an election among employees in plaintiff's Central Bakery. Various NLRB proceed-

ings have been held in response to these petitions.

At defendant's invitation, representatives of plaintiff and defendant met on June 7, 1988 to discuss their various disputes. In the course of their discussions, the parties reached understandings on a number of issues, which were memorialized in a letter dated June 8, 1988, from defendant's attorney to plaintiff's attorney. In addition to discussing the parties' agreements concerning withdrawal of pending unfair labor practices charges and representation petitions, the letter states,

> The union agrees that if it files a new petition [in Stevens Point], such petition will be for a "wall-to-wall" unit similar to that agreed upon for Green Bay ... The Employer agrees that same will be stipulated as being an appropriate unit. The employer will cooperate in permitting a prompt election based on a proper showing of interest and a unit description as stated above.
>
> \*   \*   \*   \*   \*   \*
>
> The Company will not object to any petition filed [in the Appleton store] six months or later following the election held on March 19, 1988 if such petition is based on a of fact "wall-to-wall" unit similar to the one accepted for Green Bay and if there is a proper showing of interest.
>
> \*   \*   \*   \*   \*   \*
>
> For *Copps Food Centers* the parties will abide by the unit descriptions worked out for Green Bay subject to modifications for places where there are aberrations, e.g., travel shop.

At the end of the letter, defendant's attorney states,

> I tried to outline our general understandings, some of which we expect to be abided by on the basis of a "gentlemen's agreement". Other parts of the agreement will be formalized where necessary on the basis of NLRB practices.

On November 14, 1988, defendant filed a petition with the NLRB seeking an election for a unit composed solely of meat department employees of plaintiff's food store in Manitowoc, Wisconsin, for the purpose of becoming a certified bargaining representative of those employees. Defendant requested that an election be held in a bargaining unit consisting of "all meatcutters, meat wrappers, and all other meat department employees," and excluding "grocery employees, clerical employees, supervisors and security guards, as defined in the Act, as amended." Such a unit is commonly referred to as a "departmental unit," as distinguished from a larger and more comprehensive "wall-to-wall unit."

A formal hearing was held on the Manitowoc election petition before an NLRB hearing officer on December 7, 12, 13, and 30, 1988. At the hearing, plaintiff argued among other things that defendant should be precluded from petitioning for the departmental unit because of the agreements reached between the parties at the June 7, 1988 meeting. The hearing officer received the June 8 letter as an exhibit. The officer also invited and allowed the introduction of evidence relating to the alleged agreement.

In its post-hearing statement of fact and law submitted to the NLRB's Regional Director after the hearing, plaintiff contended that the NLRB should give effect to the alleged "agreement" reached by plaintiff and defendant on June 7, 1988, and should apply the agreement to the Manitowoc election petition.

On January 24, 1989, the Regional Director of Region 30 issued a Decision and Direction of Election in the Manitowoc case, finding that the departmental unit that had petitioned for election was an appropriate unit. The Regional Director refused to enforce the alleged agreement, stating

> Initially, the Employer contends that this petition should be dismissed based upon a private agreement between the parties entered into on June 8, 1988. This agreement is a letter from [defendant] to [plaintiff] and states, inter alia, that in all further organizing efforts, the Petitioner will seek only a store-wide unit. While recognizing the merits of the Employer's arguments, I am unable to dismiss this

petition for the following reasons: the Board was not a party to the June 8 agreement; the parties to a Board Stipulated Election Agreement are not bound by that unit description in other cases. *S.C.M. Corporation*, 270 NLRB 885, 886 (1984) permits the Board to accept the parties['] unit stipulation. However, the Employer has not cited any case holding that the Board must honor or enforce the parties' non-Board unit stipulation.

On December 9, 1988, defendant filed another petition with the NLRB seeking an election among the meat department employees of plaintiff's grocery store in Stevens Point. At the February 1989 hearing on the petition, the parties stipulated that the entire record from the Manitowoc proceeding would be included in the formal record of the Stevens Point proceeding. No new evidence concerning the alleged agreement at issue was introduced by either party.

In its post-hearing statement of fact and law submitted to the Regional Director after the Stevens Point hearing, plaintiff contended again that the NLRB should give effect to the alleged agreement reached by the parties on June 7, 1988.

On March 31, 1989, the Regional Director issued a decision in the Stevens Point case. He found that the departmental unit petitioned for by defendant was an appropriate unit. Again, the Regional Director refused to enforce the alleged private agreement between the parties, noting that plaintiff was "attempting to deny the Board the opportunity to exercise its statutory right to determine the appropriate bargaining unit pursuant to Section 9(b) of the Act."

Both decisions are now under review by the Board, at plaintiff's request.

## OPINION

### A. Uncertainty in the Law

█ This case involves a clash between two policies, one favoring the exercise of federal court jurisdiction, and the other discouraging it. On the one hand, there is the policy that federal courts should use their authority under § 301 to resolve contract disputes between employers and unions that are significant to the maintenance of labor peace. *Retail Clerks International Ass'n, Local Union Nos. 128 and 633 v. Lion Dry Goods*, 369 U.S. 17, 28, 82 S.Ct. 541, 548, 7 L.Ed.2d 503 (1962). On the other, there is the "very, very strong policy" that primary jurisdiction over issues involving representation is vested in the National Labor Relations Board. *Local Union 204, etc. v. Iowa Electric Light*, 668 F.2d 413, 418–19 (8th Cir.1982).

In two major cases, the United States Supreme Court reached differing conclusions about the way in which district courts are to address contract disputes that implicate representational issues. *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964); *South Prairie Constr. Co. v. Local 627, Int'l Union of Operating Engineers*, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976). In *Carey*, the Court resolved the conflict in favor of the federal court's § 301 jurisdiction to enforce an arbitration clause in a collective bargaining agreement, despite the fact that the issue requiring arbitration was a question that involved the union's representational status. 375 U.S. at 268, 84 S.Ct. at 407. However, in *South Prairie*, the Court held that an appellate court improperly invaded the province of the Board by proceeding to decide a representational issue raised in the context of a § 301 contract dispute instead of remanding the case to the NLRB for an initial determination. 425 U.S. at 806, 96 S.Ct. at 1845.

Appellate courts have harmonized the apparent conflict between these two cases in different ways. Some have narrowly interpreted *Carey*'s endorsement of federal courts' § 301 jurisdiction, limiting the ruling to cases involving the enforcement of arbitration clauses. *See, e.g., Local No. 3-193 International Woodworkers of America v. Ketchikan Pulp Co.*, 611 F.2d 1295, 1298 (9th Cir.1980); *Iowa Electric Light*, 668 F.2d at 419. Other courts have given a narrow interpretation to *South Prairie*'s emphasis on deference to the NLRB, reading the decision as a ruling on

the appropriate scope of appellate review of the decision of an administrative body. *Trustees of Iron Workers Fund v. A & P Steel*, 812 F.2d 1518, 1526–27 (10th Cir. 1987). A close examination of these circuit court decisions reveals that two major factors influence the courts in their attempts to find the appropriate balance between the exercise of § 301 jurisdiction and deference to the NLRB on issues of representation.

In one line of cases, courts examine the major issues to be decided in the case before them to determine whether the issues can be characterized as "primarily representational" or "primarily contractual." *Iowa Electric Light*, 668 F.2d at 419. In some cases, federal district courts are directed to exercise its § 301 jurisdiction only to the extent that they can determine appropriate relief without ruling on primarily representational questions. *See, e.g., Amalgamated Clothing & Textile Wkrs. v. Facetglas, Inc.*, 845 F.2d 1250, 1253 (4th Cir.1988). *See also Brotherhood of Teamsters, Local No. 70 v. California Consolidators, Inc.*, 693 F.2d 81 (9th Cir.1982). Other courts have held that district courts may decide representational questions when such determinations are essential to resolution of genuine contractual claims. *A & P Steel*, 812 F.2d at 1526. *See also Carpenters Local Union No., 1846 v. Pratt–Farnsworth*, 690 F.2d 489 (5th Cir. 1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983), in which the court stated,

> If anything, the power to enforce a contract must necessarily include the ability to decide who is bound by the contract. No question is more basic to the existence of contractual rights. Thus to the extent that the identity of the obligees is bound up in representational issues, the federal courts must be empowered to decide those issues for the purpose of determining contractual rights and obligations.

*Id.* at 518.

Second, courts have looked to the availability of Board proceedings in deciding whether to exercise § 301 jurisdiction over contract disputes that involve representational questions. Circuit courts of appeals have construed *Carey* narrowly to preclude § 301 jurisdiction where the parties have invoked federal court jurisdiction to circumvent an existing Board disposition of the merits of their claims, where the parties have colluded to avoid the NLRB in an attempt to undermine employee self-determination, or where exercise of the district court's § 301 authority would usurp the NLRB's power to dispose of a case over which it has already assumed jurisdiction. *See United Brotherhood of Carpenters and Joiners of America, Local Union No. 1694 v. W.T. Galliher & Bros., Inc.*, 787 F.2d 953, 954 (4th Cir.1986) *and cases cited therein*. In one case, the Court of Appeals for the Tenth Circuit upheld the exercise of § 301 jurisdiction over a contract dispute involving a representational question, but limited its ruling explicitly to cases "where the same representational question is not pending before the NLRB or where the NLRB's jurisdiction has not been invoked with respect to the dispute between the parties." *A & P Steel*, 812 F.2d at 1526–27. The Court of Appeals for the Ninth Circuit ruled that the doctrine granting primary jurisdiction to the NLRB is inapplicable where the employer is unable to invoke the Board's jurisdiction, where the party bringing the action has no standing before the Board, or where the Board has chosen not to hear the party's case. *J.S. Griffith Const. v. United Bro. of Carpenters*, 785 F.2d 706, 710–11 (9th Cir.1986), *discussing Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978); *Laborers Health & Welfare Trust Fund v. Kaufman & Broad, Inc.*, 707 F.2d 412 (9th Cir.1983); *Operating Engineers Pension Trust v. Beck Engineering & Surveying Co.*, 746 F.2d 557 (9th Cir.1984).

As these cases demonstrate, courts do not apply bright-line rules to determine whether their § 301 jurisdiction over contract disputes should override the doctrine that the NLRB has primary jurisdiction over representational issues. Rather, they balance the interests at stake in the case before them. Where there are particularly

strong reasons to use judicial power to resolve contractual disputes, such as the dominance of contractual issues or the absence of NLRB remedies, courts exercise § 301 jurisdiction. Where there are particularly strong reasons to defer to the Board, such as the dominance of representational issues or the potential of circumventing or negating Board determinations, courts invoke the primary jurisdiction doctrine.

## B. Propriety of Deference to the NLRB

Further examination of this complex and conflicting body of law does not persuade me to reverse the ruling that deference to the National Labor Relations Board is proper in this case. The policies behind the exercise of § 301 jurisdiction are particularly weak in this case and the policies in favor of deference are particularly strong. The parties' purported contract was not designed to avert or end a strike, as in *Lion Dry Goods*, 369 U.S. at 19, 82 S.Ct. at 543, or to avoid divisive territorial battles between unions, as in *United Textile Workers v. Textile Workers Union*, 258 F.2d 743, 745 (7th Cir.1958). In essence, it was a stipulated settlement of unfair labor practice litigation. In a broad sense, such a settlement may be said to contribute to the maintenance of labor peace. But it does not provide a strong reason to interfere with the authority of the NLRB over representational issues.

In contrast, there are good reasons to defer to the NLRB. Although this case would not require the court actually to rule on the representational issue whether plaintiff's meat departments are appropriate bargaining units, it would be impossible to enforce the parties' agreement without negating the NLRB's determinations on that issue. Moreover, the NLRB has already considered the parties' agreement and ruled that it has no effect on the propriety of the meat departments as bargaining units. The exercise of § 301 jurisdiction in this case would serve only to usurp the Board's authority regarding the effect of agreements between employers and unions to limit petitions for bargaining units.

## C. Request for a Stay

■ Plaintiff argues that even if this court reaffirms its ruling that deference to the NLRB is appropriate in this case, it should impose a stay pending final resolution by the NLRB rather than dismissing the case. This argument is not persuasive. If, as I have held, enforcement of the parties' agreement would be an improper interference with the NLRB's proceedings, it would be just as improper to act after the NLRB has completed its determinations as it would be to act now. As I noted in the October 19 opinion and order, a decision in plaintiff's favor in this court would give plaintiff a defense to any unfair labor charge the NLRB might bring against it for refusing to recognize defendant's representation of plaintiff's meat departments. This would effectively negate the NLRB's determination that the meat departments are appropriate units for defendant's representation. Therefore, I will deny plaintiff's request to stay rather than dismiss its § 301 contract action against defendant.

## D. Rule 11 Sanctions

■ Rule 11 has both a subjective and an objective component.

> A paper "interposed for any improper purpose" is sanctionable whether or not it is supported by the facts and the law, and no matter how careful the pre-filing investigation. The objective component is that a paper filed in the best of faith, by a lawyer convinced of the justice of his client's cause, is sanctionable if counsel neglected to make "reasonable inquiry" beforehand.

*Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 931–32 (7th Cir.1989). An objectively frivolous legal position supports an inference that the signer did not do a reasonable amount of research. *Id.* at 932.

In the October 19 opinion, I ruled that it was not reasonable for plaintiff to believe it was appropriate to ask a court to exercise § 301 jurisdiction in this case. Upon further analysis of the complexity and un-

certainty in the case law governing the boundaries between federal court § 301 jurisdiction and the doctrine of the NLRB's primary jurisdiction, I reverse that ruling. In its original briefs on the cross motions for summary judgment, plaintiff focussed on the "primarily contractual" nature of the questions of interpreting the meaning and validity of the parties' agreement. As illustrated above, these are factors that have persuaded some courts that it is proper to exercise jurisdiction despite the presence of the representational issues in contract disputes between employers and unions. In addition, plaintiff focussed on the fact this court need not actually address the representational issue of what bargaining unit was appropriate in order to enforce the contract. This factor was decisive in two cases cited by plaintiff. *Facetglas*, 845 F.2d at 1253; *California Consolidators*, 693 F.2d at 84. Although I continue to find other factors more important in this case, I am no longer convinced that plaintiff's arguments were so unreasonable as to be frivolous.

Plaintiff was less than candid with respect to the body of case law from which it drew its support. However, defendant was equally guilty of coloring its statement of the law to favor the arguments it advanced. Neither party was forthright in presenting the unsettled state of this body of law. Both parties characterized the cases they cited as providing clear support for their respective positions, instead of arguing within the context of the conflicting Supreme Court decisions and divergent attempts to harmonize them that more accurately reflect the state of the law. This strategy is regrettable and ultimately less persuasive than intellectual honesty. However, it may be more reflective of the state of the law than the parties' malfeasance.

Because plaintiff had reasonable grounds for bringing this action, I cannot find that it was brought for improper purposes. It is a lawyer's responsibility to pursue every avenue of relief that is reasonably open to his or her client. Defendant argues that the timing of plaintiff's action makes them suspect. However, the fact that plaintiff waited until after an adverse NLRB bargaining unit determination to attempt to avail itself of this court's jurisdiction does not compel a conclusion of improper motive. Therefore, I will vacate the order of October 19, 1989 insofar as it imposes Rule 11 sanctions against plaintiff.

### ORDER

IT IS ORDERED that plaintiff's motion to alter or amend judgment in this case is GRANTED in part and DENIED in part.

FURTHER IT IS ORDERED that the Rule 11 sanctions imposed on plaintiff in the order of October 19, 1989 are vacated. In all other respects, the order remains unchanged.