940 F.2d 665
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
COPPS FOOD CENTER, INCORPORATED, Plaintiff-Appellant,
v.
UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL 73-A,
Defendant-Appellee.
 No. 90-1905.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 3, 1990.
Decided July 23, 1991.
 
 1
 Before Bauer, Chief Judge, Manion, Circuit Judge, and Hubert L. Will, Senior District Judge*.
 
 ORDER
 A. Facts
 
 2
 Copps Food Center, Inc. filed an action in U.S. District Court seeking enforcement of a settlement agreement it had reached with the United Food & Commercial Workers Union, Local 73-A ("Union"). Under the agreement the Union promised to suspend its efforts to unionize only meat department workers in Copps' supermarkets, and further agreed to file future election petitions with the National Labor Relations Board ("NLRB") requesting only "wall-to-wall" representation of all non-management workers in Copps' supermarkets. In addition, the Union agreed to withdraw several unfair labor practice charges it had filed with the NLRB against Copps. In exchange, Copps promised the Union a prompt "wall-to-wall" election in Copps' Green Bay store and in its other stores in the future as petitioned for by the Union.[1]
 
 
 3
 The election in Copps' Green Bay store was held and the Union lost. Consequently the Union, contrary to the agreement, filed petitions with the NLRB respecting representation of meat department employees in Copps' Manitowoc, Wisconsin store and Steven's Point, Wisconsin store. Each petition sought a determination by the NLRB that the meat department workers in each case were suitable units for union representation, and sought authorization for an election among the meat department workers in each store to determine whether the Union would be their collective bargaining agent. Copps sought dismissal of both petitions in hearings and briefs before the NLRB Regional Director of Region 30. Copps claimed the petitions for unit elections in the Manitowoc store and the Steven's Point store violated the parties' earlier agreement on a proper (wall-to-wall) bargaining unit and that the meat department workers were not a suitable unit for particularized representation.
 
 
 4
 In January, 1989 the Regional Director found that the meat department workers were a suitable unit and ordered elections in the Manitowoc store. The Regional Director made the same finding with respect to the Steven's Point store on March 31, 1989. In both cases the Regional Director also held that the NLRB was unable to enforce the parties' agreement and could only interpret contracts in which the NLRB was a party. The elections were held but the votes were impounded until Copps' requested review of the Regional Director's decisions was completed by the NLRB in Washington, D.C. Copps filed its Request for Review of the Regional Director's Decision with the Board in the Manitowoc and Steven's Point decisions on February 14, 1989 and April, 1989 respectively.
 
 
 5
 On February 13, 1989, Copps brought this action pursuant to Sec. 301 of the Labor-Management Relations Act (29 U.S.C. Sec. 185) in U.S. District Court denominated as a "Complaint for Preliminary Injunction, Permanent Injunction, Specific Performance and Damages." At Copps' request a hearing on its Motion for Preliminary Injunction was scheduled for February 14, 1989. During the hearing, Copps did not mention to the court it had filed its Request for Review with the NLRB. The district court denied Copps' Motion for Preliminary Injunction. The district court in a thorough decision did reach the merits of the case where it granted the Union's summary judgment motion, refused to enforce the agreement and did not dismiss the Union's petitions. See Copps Food Center, Inc. v. United Food & Commercial Workers Union, Local 73-A, 733 F.Supp. 304 (1990). The district court based its decision, in part, on its belief that enforcement of the agreement would interfere with the National Labor Relations Board's existing jurisdiction in the case. On December 3, 1990, the parties appeared before this court to argue whether or not the district court was correct when it refrained from asserting jurisdiction pursuant to Sec. 301 of the Labor-Management Relations Act (29 U.S.C. Sec. 185) on a matter in which the National Labor Relations Board's jurisdiction had been sought and wherein an adjudication had been reached.
 
 
 6
 A month later, on January 28, 1991, the NLRB in Washington, D.C. issued its review of the Regional Director's decision concerning the Union's petition relating to the meat department workers at Copps' Manitowoc store. The NLRB reversed the Regional Director's decision finding that the meat department workers are not a suitable unit for separate collective bargaining representation. The NLRB was silent on the Regional Director's decision to deny enforcement of the agreement between Copps and the Union. The Union's petition was dismissed by the NLRB. On this basis, the NLRB remanded the Steven's Point petition for reconsideration consistent with the resolution of the Manitowoc petition. On remand the Regional Director reversed himself, and on March 27, 1991 issued an order announcing that the Steven's Point meat department workers were an unsuitable collective bargaining unit. The NLRB in Washington denied the Union's petition to review the new decision.[2]
 
 B. Discussion
 
 7
 This court reviews a district court's grant of summary judgment de novo. Town of South Whitley v. Cincinnati Insurance Co., 921 F.2d 104, 107 (7th Cir.1990); PPG Indus. v. Russell, 887 F.2d 820, 823 (7th Cir.1989). In the present case we are asked to decide whether the district court properly denied enforcement of the parties' agreement pursuant to Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185. Most of the case law focuses on determining what kind of contract disputes between employers and unions can be resolved under Sec. 301. The case law emphasizes that contracts significant to the maintenance of negotiated labor peace are suitable for the federal courts' Sec. 301 jurisdiction,[3] Retail Clerks International Ass'n, Local Union Nos. 128 and 633 v. Lion Day Goods, 369 U.S. 17, 28 (1962), while cases which touch on issues relating to representational questions between the union and the employer are best suited to the NLRB in which there is a "strong policy" that it has primary jurisdiction over such issues. Local Union 204 etc. v. Iowa Electric Light, 668 F.2d 413, 418-19 (8th Cir.1982). In answering the question of whether the federal court has jurisdiction to hear a contract-based dispute between a union and an employer, the court generally has to employ a difficult process of determining whether a particular dispute is primarily contractual--hence suited for Sec. 301 federal court jurisdiction--or representational, requiring preliminary NLRB determination of the matter.
 
 
 8
 The district court carefully analyzed the competing case law governing the exercise of federal court jurisdiction under Sec. 301 to resolve contract disputes and the policy of reserving to the NLRB jurisdiction over issues involving representation. Copps Food Center, Inc. v. Local No. 73A, 733 F.Supp. 304, 307 (W.D.Wis.1990).
 
 
 9
 In some cases, federal district courts are directed to exercise its Sec. 301 jurisdiction only to the extent that they can determine appropriate relief without ruling on primarily representational questions.... Other courts have held that district courts may decide representational questions when such determinations are essential to resolution of genuine contractual issues.
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 As these cases demonstrate, courts do not apply bright-line rules to determine whether their Sec. 301 jurisdiction over contract disputes should override the doctrine that the NLRB has primary jurisdiction over representational issues. Rather, they balance the interest at stake in the case before them. id. at 308.
 
 
 13
 In examining the competing forces of law and fact, the court concluded that deference to the NLRB was proper in this case. The court's conclusion--that the "exercise of Sec. 301 jurisdiction in this case would serve only to usurp the Board's authority regarding the effect of agreements between employers and Unions to limit petitions for bargaining units"--is justifiable under these circumstances.
 
 
 14
 The form of contract in this case is unusual--essentially a letter from the Union's attorney outlining the terms of an agreement reached at a meeting the previous day. The letter describes the four points outlined as "general understandings" some of which would be abided by "on the basis of a 'gentlemen's agreement.' " There is no acknowledgment, nor is there any claim that the company's attorney responded to the letter's invitation to advise if any of the outlined points were incorrect. And the election did go forward as anticipated in the agreement. The alleged breach occurred when the Union lost the wall-to-wall election and subsequently petitioned for an election in a bargaining unit composed solely of the meat department employees at the company's Manitowoc center. The Union refused to withdraw the petition even though the letter agreement stated that the parties would abide by the wall-to-wall unit description.
 
 
 15
 On its face this appears to be a contract dispute that would invoke federal court jurisdiction under Sec. 301. But we cannot ignore the fact that the company has pursued its appeal of the NLRB Regional Director's order for an election for a unit consisting only of the meat department workers.
 
 
 16
 We agree with the district court that this case would not require an actual ruling on the representational issue of whether meat departments are appropriate bargaining units. But we recognize, as the district court did, that a decision by us on the contract matter could adversely impact the preexisting NLRB decisionmaking process with respect to the representational issue this case presents. Moreover, as the district court points out, the question of the agreement's applicability to this case was argued before the Regional Director and his decision was appealed to the NLRB. We agree with the lower court that it would be inappropriate for the courts to upset the parties' decision to have the NLRB resolve this dispute, particularly when the expertise of the NLRB provides unique authority to resolve such management-labor conflicts. In sum, we are reluctant to interfere with the parties' selected course of a legitimate alternative process for settling labor disputes.
 
 
 17
 The parties submitted to the NLRB's jurisdiction on this matter and permitted it to proceed to an advanced level. It was not until the last day Copps had to file an appeal with the NLRB that it finally decided to file its Sec. 301 action with the district court. In fact, Copps filed its Sec. 301 claim and its NLRB appeal almost simultaneously. Copps' decision to resist the Union's post-election petitions in NLRB hearings rather than file an immediate Sec. 301 action in the district court to enforce the agreement was Copps' decision to make. Its timing in filing this Sec. 301 claim after failing at the Regional Director level of NLRB review suggests that Copps was literally interested in getting a second opinion--while concurrently appealing the Regional Director's decision to the NLRB. Copps made a strategic decision, and participated in the NLRB decisionmaking process over the issue concerning the enforceability of the agreement. Copps' request that we now exercise Sec. 301 jurisdiction to enforce the agreement would, we feel, amount to a needless usurpation of the NLRB's already established jurisdiction. The fact that Copps did succeed with its appeal weighs heavily, albeit in hindsight, in favor of limiting its challenge to one jurisdiction.
 
 
 18
 The NLRB's recent ruling that the meat department workers are an inappropriate unit for collective bargaining representation, effectively gives the appellant, Copps, the relief it seeks in this appeal. Copps hoped that the enforcement of the agreement would prevent segmentation of its workforce by the Union for collective bargaining purposes. Now the likelihood of such segmentation seems remote based on the NLRB's recent ruling. Any ruling on the propriety of the Sec. 301 claim would be advisory since the purpose for enforcement of the agreement is now moot. We see no need for such a ruling.
 
 
 19
 For the foregoing reasons the decision of the district court is
 
 
 20
 AFFIRMED.
 
 
 
 *
 Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 This "agreement" was actually a letter dated June 8, 1988, from the Union's attorney to the company's attorney confirming "the terms of our agreement reached in my office on June 7, 1989" regarding, among other things, the election and the withdrawal of unfair labor practice changes pending before the NLRB
 
 
 [2]
 Copps provided the NLRB's most recent decisions in these cases to this court pursuant to Fed.R.App.P. 28(j)
 
 
 [3]
 The exercise of federal court Sec. 301 jurisdiction has usually involves the enforcement of arbitration clauses in collective bargaining contracts. Carey v. Westinghouse Electric Corp., 375 U.S. 261 (1964); Local No. 3-193 International Woodworkers of America v. Ketchikan Pulp Co., 611 F.2d 1295, 1298 (9th Cir.1980); Local Union 204 etc. v. Iowa Electric Light, 668 F.2d 413, 419 (8th Cir.1982)