# UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 700, Plaintiff,

v.

# THE KROGER CO., an Ohio Corporation, and Kroger Limited Partnership I d/b/a the Kroger Company, Defendants.

### Civil No. 1:99cv52.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 21, 2001.

Jairus M. Gilden, Mindy L. Kallus, Karmel and Gilden, Chicago, IL, Peggy A. Hillman, Law Offices of Peggy A. Hillman, Indianapolis, IN, for plaintiff.

Charles B. Baldwin, Kenneth B. Siepman, Thomas Joseph Wendt, Ogletree Deakins Nash Smoak and Stewart, Indianapolis, IN, for defendants.

### ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the court on cross-motions for summary judgment. The defendants, The Kroger Co., an Ohio Corporation, and Kroger Limited Partnership I d/b/a The Kroger Company ("Kroger"), filed their motion for summary judgment on November 22, 2000. The plaintiff, United Food and Commercial Workers Union Local 700 ("Local 700"), filed its amended motion for summary judgment on December 1, 2000. The parties completed briefing the motions on January 26, 2001.

For the following reasons, Kroger's motion for summary judgment will be denied and Local 700's motion for summary judgment will be granted.

### Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id. In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v.. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992)(quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact", *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. *See, Waldridge v. American Hoechst Corp. et al.*, 24 F.3d 918 (7th Cir.1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249–251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine

Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed. R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. 2505. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.1983).

## Discussion

On February 11, 1999, Local 700 filed suit against Kroger pursuant to Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 ("LMRA"). This suit seeks to compel Kroger to arbitrate pending grievances pursuant to the terms of the parties' Collective Bargaining Agreements ("CBAs")[1]. One of these CBAs, called the "Meat Agreement", covers all (non-supervisory) employees working in the Meat Depart-

ments in Kroger stores in an identified group of cities which includes Auburn and Warsaw, Indiana. The other agreement, called the "Clerks Agreement", covers all (non-supervisory) employees other than the Meat Department employees working in Kroger's stores operating in an identified list of counties in northern Indiana. Auburn and Warsaw, Indiana are located in the counties covered by the Clerks Agreement.

The Clerks Agreement includes the following language:

*ARTICLE 20. NEW STORES*

In the event the Employer opens a new store, or replacement store, the Employer will post in each of the Employer's stores within the geographical jurisdiction of the Union, notice of the new store and its address. Such notice will be posted four (4) weeks in advance of opening and remain posted for ten (10) days. Employees who desire to work in the new store will notify the Zone Manager in writing with a copy to the Union. The Employer will make a reasonable effort to accommodate the desires of employees to transfer to the new store.

\* \* \* \* \* \*

*ARTICLE 21. STORE CLOSING*

\* \* \* \* \* \*

I. The Employer agrees to recall any laid off employees in any new location opened under the jurisdiction of the Local Union covered by this Agreement.

The Meat Agreement includes the following language:

*SCHEDULE "D" STORE CLOSING*

A. In the event the Employer closes or sells a store, employees shall have the right to transfer to another store of the Employer in accordance with Article 12, Section A–2 of the contract; or at their option, (except stores being closed due

---

1. Both CBAs provide for arbitration "[s]hould any differences, disputes or complaints arise

over the interpretation or application of the contents of this Agreement . . . ."

to replacement store), the right to receive severance pay . . . .

\* \* \* \* \* \*

I. The Company agrees to recall any laid off employees in any new locations opened under the jurisdiction of the Local Union covered by this Agreement.

According to Local 700's complaint, on or about June 19, 1998, Kroger informed Local 700 that it was in the process of acquiring a small chain of grocery stores which operates under the name of Owen's Supermarkets ("Owen's stores"). The Owen's stores are located in Warsaw, Auburn, Huntington and Ligonier, Indiana. Local 700 alleges that the locations of some or all of these stores, including the Warsaw and Auburn stores, fall within the coverage clauses of the Meat and Clerks Agreements.

On June 25, 1998, Local 700 responded by correspondence indicating that it believed that Kroger's announcement of its intention to purchase the Owen's stores and operate them within the coverage areas described by the Meat and Clerks Agreements implicated those agreements. During early August, 1998, Kroger representatives informed Local 700 that the existing Kroger stores in Auburn and Warsaw would be closed. This information was confirmed by correspondence of August 14, 1998 which set the closure date for September 14, 1998.

In a series of correspondence between August 20, and September 25, 1998, Local 700 identified various disputes with Kroger over the Owen's stores and the closing of the Kroger stores. Local 700 asked that Kroger treat these disputes as grievances should Kroger not agree to Local 700's claims. The disputes included the failure to recognize that one or more of the Owen's stores in Auburn and Warsaw replaced closed Kroger stores, the failure to apply Article 20 of the Clerks Agreement to the opening of the Owen's stores, the failure to properly apply Articles 21 and 9 of the Clerks Agreement, the failure to

properly apply schedule D and Article XII of the Meat Agreement, the failure to grant access to the Owen's stores and to provide other information concerning employees at those stores. Kroger denied all of the grievances.

On October 7, 1998, Local 700 referred these matters to arbitration. Kroger informed Local 700 that it refused to arbitrate. Therefore, Local 700 now seeks an order directing Kroger to comply with the arbitration provisions of the Clerks and Meat Agreements and to proceed to arbitration on the issues presented in the grievances concerning the Owen's stores and the closed Kroger stores.

Kroger now seeks summary judgment, claiming that the CBAs do not apply to the Owen's stores and thus it is not required to submit to arbitration. In a nutshell, Kroger argues that the Owen's stores were never closed and thus were never "opened" by Kroger, rendering the CBAs inapplicable. Kroger also argues that the Owen's stores, as pre-existing businesses, do not meet the definition of "new" or "replacement" Kroger stores. In turn, Local 700 seeks summary judgment in its favor, claiming that the CBAs do apply to the Owen's stores because they replaced stores that Kroger closed and that, in any event, an arbitrator must decide whether the Owen's stores qualify as new or replacement Kroger stores.

The pertinent background facts are as follows. In late 1997 or early 1998, Joe Prout, the owner of Owen's Supermarkets, a chain of six grocery stores located in Auburn, Huntington, Ligonier, and Warsaw Indiana, advised Kroger he was interested in selling his business. Approximately three weeks later, Prout met with Don Becker, the President of the Kroger Central Marketing Area, to discuss the possible acquisition of the Owen's business by Kroger. During this meeting, Prout emphasized to Becker that whoever acquired the business needed to operate it in the Owen's tradition and, in particular, to retain the existing Owen's employees.

Becker advised Prout that Kroger intended to operate Owen's under its existing name and assured Prout that Kroger would retain the Owen's employees.

Kroger determined that acquiring Owen's was a very good idea. The Owen's stores were profitable, had greater market share, more goodwill, and better facilities than Kroger stores in the communities where they competed (Auburn and Warsaw). Owen's also had two stores in Huntington, whereas Kroger had no stores in Huntington. On June 17, 1998, Kroger entered into a purchase agreement to acquire the Owen's stores from Prout. On June 19, 1998, Kroger issued a press release concerning the acquisition. That same day Becker and Prout met with the Owen's employees from each of the Owen's stores to discuss Kroger's acquisition of Owen's. At each meeting, the Owen's employees asked whether they had a job and whether they had to join Local 700. Becker and Prout told the Owen's employees that retaining them was a major component of the acquisition and that it was their decision whether or not to join Local 700. According to Kroger, the Owen's employees were adamantly opposed to Local 700.

It is undisputed that the Owen's stores were never actually closed. Rather, the business changed hands from Prout to Kroger with absolutely no interruption of business. Kroger also claims that it did not treat the Owen's employees as new hires. Following the acquisition, the Owen's employees retained the Owen's hire date, pay, pay system, holidays, vacation, jury duty policy, personal leave policy, health insurance, accidental death and life insurance, and short term disability insurance. Owen's also has its own employee handbook that contains work rules and other policies and procedures in effect at the Owen's stores. Additionally, Owen's management, not Kroger management, hires, evaluates, disciplines, and discharges Owen's employees. Kroger has not changed any Owen's management decision to terminate any Owen's employee. De-

partment heads at Owen's are salary exempt members of management, whereas at Kroger department heads are part of the bargaining unit. There is not any hourly employee interchange between Owen's stores and Kroger stores.

After acquiring Owen's, Kroger continued to review the Owen's and Kroger operations. Upon reviewing the available information, Kroger decided to close the Kroger stores in Auburn and Warsaw. By letter dated August 14, 1998, Kroger informed Local 700 that it was going to close the Kroger stores in Auburn and Warsaw. Following the announcement, Becker and Michael Murdock, Kroger's Human Resources Manager, met with the Kroger employees in the Auburn and Warsaw stores to inform the employees of the store closings. Becker and Murdock told the Kroger employees that the stores were closing because they had lost a tremendous amount of money and had been losing a lot of money for a long time. They also told the employees that Owen's had more business than the Kroger stores. Murdock then discussed with the Kroger employees their rights under the store closing provisions of the CBAs. Murdock told the employees that they could transfer to other Kroger stores covered by the CBAs or obtain severance pay. Murdock also told the Kroger employees they could apply for open positions at the Owen's stores.

On August 20, 1998, Local 700 claimed that Kroger had violated the CBAs. Local 700 contended that the Owen's stores in Warsaw and Auburn were substitutes for the Kroger stores that were closing and that, upon closing the stores, the Kroger employees in Warsaw and Auburn should have been transferred to the Owen's stores. Kroger, however, took the position that the employees were not entitled to transfer to the Owen's stores under the existing CBAs and that Kroger was not obligated to bargain over the decision to close the Kroger stores.

On September 8, 1998, Local 700 filed an unfair labor practice ("ULP") charge

against Kroger, Charge No. 25–CA–26211. On October 20, 1998, Kroger advised the NLRB that the CBAs did not apply to the Owen's stores. Upon completion of its investigation, the NLRB advised Local 700 that the charge lacked merit.[2] The NLRB also told the Union that the CBAs in effect at Kroger's Auburn and Warsaw Kroger stores did not apply to Owen's because the Owen's employees were not represented by Local 700.[3] Consistent with standard NLRB procedures, the NLRB advised Local 700 that it would dismiss the ULP charge if it were not voluntarily withdrawn.[4] Local 700 withdrew the charge.

By later dated September 25, 1998, Local 700 submitted grievances related to Kroger's acquisition of the Owen's stores and the closing of the Auburn and Warsaw Kroger stores. However, Kroger viewed the NLRB's decision with respect to the ULP charge as dispositive of the matters raised in the Union's grievance and, therefore, indicated it would not arbitrate the dispute.

Kroger argues that this court should enter summary judgment in its favor because Local 700's grievance is simply not arbitrable under the terms of the CBAs. According to Kroger, the Owen's business is not covered by the CBAs and, therefore, Local 700's grievance over the applicability of the CBAs to Owen's cannot arise under the CBAs.

Local 700, however, takes the position that it is only seeking to apply certain job security features contained in the CBAs to Kroger's purchase of the Owen's stores. Local 700 argues that it is undisputed that when Kroger opens new stores, it provides transfer opportunities and rights to employees in its existing Kroger stores even before it hires additional workforce at the new stores. Additionally, with respect to the Auburn and Warsaw locations, Local 700 argues that in view of Kroger's closing of its existing stores in Auburn and Warsaw after it purchased the Owen's stores in those cities, Local 700 viewed these Owen's stores as "replacement" stores, requiring Kroger to transfer the Kroger employees to the Owen's stores. Even if the Owen's stores in Auburn and Warsaw are not viewed as "replacement" stores, Local 700 argues that the provisions in the CBA relating to store closings and the recall rights of laid-off employees required Kroger to permit Kroger employees to displace the Owen's employees at the Auburn and Warsaw Owen's store's. Local 700 concludes that if Kroger had honored the CBA and permitted Kroger employees to transfer into the Owen's stores and/or displace the Owen's employees on the basis of seniority, then the Kroger employees would constitute the majority of the employees at the Owen's stores and the CBAs would then apply to the Owen's stores.

 It is undisputed that the CBAs do not at this time apply to the Owen's stores, as Local 700 is not the bargaining representative at the Owen's stores. Therefore, the real dispute in this case is whether Kroger was required to arbitrate the issue of whether the Owen's stores constitute "new" or "replacement" stores, and whether Kroger "opened" those stores, for purposes of the CBAs. As Local 700 points out, there is a strong presumption in favor of arbitrability. *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). That presumption is only rebutted where a court can say with "positive assurance" that the matter is not arbitrable. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). All doubts are to be decided

---

**2.** Request for Admission No. 3; November 1, 2000 Order affirming Magistrate Judge Cosbey's September 18 Memorandum and Order deeming admitted plaintiff's responses to request for admissions 2–5 ("November 1, 2000 Order").

**3.** Request for Admission No. 4 and 5; November 1, 2000 Order.

**4.** Request for Admission No. 2; November 1, 2000 Order.

in favor of arbitrability. *Id.; Local 744, IBT v. Hinkley & Schmitt,* 76 F.3d 162, 164 (7th Cir.1996). The function of the courts is limited to ascertaining whether the party seeking arbitration is making a claim which, on its face, is governed by the contract. *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

Clearly, the issues of what specific terms (such as "new", "replacement" and "opened") in a CBA mean are issues presumptively reserved to arbitration. *See e.g. United Food and Commercial Workers Union, Local 400 v. Shoppers Food Warehouse Corp.,* 35 F.3d 958, 960 (4th Cir.1994) (holding that arbitration clause in CBA clearly covered a dispute over whether a beverage and snack store constituted a "new food store")[5]. Thus, unless Kroger presents evidence supporting a "positive assurance" that these issues are not subject to arbitration, the issues must be sent to arbitration. Kroger argues that its interpretation of the CBA is the only logical interpretation. According to Kroger, a store is not a "new" or "replacement" store unless it is a newly constructed store, and a store is not "opened" by Kroger if it is an already existing business, such as the situation with the Owen's stores. Kroger contends that if the parties had intended the CBA to cover situations such as the acquisition of existing businesses, they would have used the terms such as "opens, purchases, acquires, operates, controls, takes over" instead of simply using the term "opens". Kroger argues that Local 700's position in this case, if accepted as valid, would require an interpretation of the CBAs that precludes Kroger from acquiring an existing business with existing employees, when such restriction is not present anywhere in the CBAs.

Kroger claims that this case is indistinguishable from *Terre Haute Newspaper Guild Local No. 46 v. Thomson Newspapers, Inc.,* 68 F.Supp.2d 1028 (S.D.Ind. 1999). In *Thomson Newspapers,* the district court held that non-union employees were not subject to the CBA because they were part of a separate division of the parent company. However, in *Thomson Newspapers,* the employees the Union claimed were subject to the provisions of the CBA were the employees of the *new division.* Thus, the district court held that a CBA that is binding on one division or facility of a corporation is not automatically binding on new divisions or facilities. *Id.* at 1035. In the present case, in contrast, the court is being asked to determine the rights of the *Kroger employees* who were not permitted to transfer to the Owen's stores. As the CBA clearly applies to the Kroger employees, and it is the rights of these employees that are at issue (rather than the applicability of the CBAs to the non-represented Owen's employees), *Thomson Newspapers* is simply not on point. Consequently, as the CBAs provide for arbitration of *any* dispute over the interpretation or application of the CBAs, this court cannot say with positive assurance that the issues raised by Local 700 are not subject to arbitration. Therefore, the issues must be sent to arbitration.

Kroger has also taken the position that the NLRB has already ruled on Local

---

**5.** Contrary to Kroger's assertion, *Shoppers Food* is not inconsistent with Seventh Circuit case law. Kroger cites to *Local 744, International Brotherhood of Teamsters v. Hinckley & Schmitt, Inc.,* 76 F.3d 162 (7th Cir.1996), and *Independent Lift Truck Builders Union v. Hyster Company,* 2 F.3d 233 (7th Cir.1993). In both of these case, however, the question was whether the employees who sought protection under the CBA were covered by the CBA. In cases such as these, the Seventh Circuit has required the district courts to first determine whether the CBA applied to the employees. There is no dispute in the case at bar that the Kroger employees seeking the protection of the CBAs are covered by the CBAs. As the issues in the present case involve the interpretation of the language of the CBAs, and the arbitration clauses in the CBAs provide that such disputes are subject to arbitration, *Hinckley & Schmitt* and *Hyster* are not applicable.

700's allegations and that this court should therefore defer to the primary jurisdiction of the NLRB. The parties dispute the nature of the NLRB's actions, with Kroger claiming that the NLRB determined that Local 700's ULP Charge lacked merit and that such determination has preclusive effect as the Charge dealt with representational issues, and Local 700 claiming that the Regional Director merely refused to issue a complaint, which has no preclusive effect whatsoever. *See Miller Brewing Co. v. Brewery Workers*, 739 F.2d 1159, 1166 (7th Cir.1984). Kroger correctly points out that when § 301 actions implicate representational issues, courts generally do not exercise jurisdiction, but instead defer to the NLRB. *Copps Food Center, Inc. v. UFCW Local No. 73A*, 733 F.Supp. 304, 307 (W.D.Wis.1990).

Kroger claims that "[t]he fundamental issue in this case is whether the CBAs may apply at Owen's—stores where the Union does not represent the employees and where the employees do not want the Union. That is entirely a representational question. An arbitrator cannot decide this issue, as his or her role is to look at the CBA and not the rights of the Owen's employees." ` Kroger Brief in Support of Motion for Summary Judgment at 24. It is clear, however, that Kroger misunderstands the nature of Local 700's arguments. While Local 700 may wish to represent the Owen's employees, it has repeatedly stated in its briefs that it is not asking this court to compel arbitration on that point. Rather, Local 700 seeks arbitration on the issue of whether the CBAs, as applied to the Kroger employees, give the Kroger employees rights to transfer (or be re-called) to the Owen's stores because the Owen's stores are new or replacement stores opened by Kroger. As this is a question of contractual interpretation and not a question of representation, deference to the NLRB is not necessary (even assuming that the Board issued a final determination).

■ Local 700 has also made claims concerning the nature and extent of its right to enforce Kroger's obligation at new stores to recognize Local 700 and apply the CBAs upon demonstration of majority support. Specifically, Local 700 seeks access to the Owen's stores (which it considers "new locations") for the purposes of obtaining signatures from Owen's employees in an attempt to demonstrate majority support for Local 700. Local 700 has acknowledged that, prior to applying the collective bargaining agreements to "new locations", it must show that it has the level of employee support required by law. Local 700 argues that its claims with respect to its right to access the Owen's employees are contractual matters which must be left to an arbitrator. Again, the question is whether the Owen's stores are "new locations" as contemplated by the CBAs. Kroger acknowledges that it "has had no basis to contest the Union's representational rights at true new and replacement Kroger stores." Kroger Reply Brief at 11, n. 8. As the determination of whether the Owen's stores are "true new and replacement Kroger stores" requires an interpretation of the language of the CBAs, the presumption of arbitration applies. *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The function of this court is solely to determine whether Local 700's claim, on its face, is governed by the CBAs. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Clearly, Local 700's claim is governed by the arbitration clause in the CBAs which requires arbitration of disputes related to the interpretation of the CBAs. Therefore, this issue must also be sent to arbitration.

### Conclusion

On the basis of the foregoing, Kroger's motion for summary judgment is hereby

DENIED and Local 700's motion for summary judgment is hereby GRANTED.